[Civ. No. 69604. Second Dist., Div. Two. May 25, 1984.]

BALDWIN PARK REDEVELOPMENT AGENCY,
Plaintiff and Respondent, v.
DENNIS N. IRVING et al., Defendants and Appellants.

**COUNSEL**

Thorpe, Sullivan, Workman & Thorpe, Henry K. Workman and John J. Dee for Defendants and Appellants.

Robert Flandrick, Richards, Watson, Dreyfuss & Gershon, Richard Richards and Quinn M. Barrow for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—In December 1979, plaintiff Baldwin Park Redevelopment Agency (Agency) commenced this action in eminent domain to condemn and acquire certain real property owned in fee by defendants Megan and Dennis Irving. The case was subsequently bifurcated to permit a separate trial on the legal issue of whether defendants could establish a sufficient foundation to submit to the jury the matter of compensation for loss of business goodwill, as provided for in Code of Civil Procedure section

1263.510.[1] The court determined that a sufficient foundation had been laid in relation to the business enterprise Baldwin Auto Wreckers and Parts, owned and operated by defendant Megan Irving.

Jury trial commenced in May 1982, at which time the Agency moved the court *in limine* to exclude all evidence relative to the value of the inventory maintained by defendant Megan Irving's business. The motion was granted and the matter proceeded to trial. The total just compensation awarded for the taking was $599,875, including the sum of $35,000 for loss of business goodwill.

Defendant Megan Irving appeals and assigns as error the trial court's granting of the *in limine* motion excluding evidence of the devaluation of the business inventory allegedly caused by the condemning of the real property.[2]

Before proceeding to a discussion of the facts and legal issues raised by the instant case, we briefly address the Agency's contention that the appeal must be dismissed for defendant's failure to timely file her notice of appeal from the interlocutory judgment entered August 20, 1982. Here, defendant's notice of appeal, filed December 9, 1982, erroneously referred to the "Final Order and Judgment in Condemnation." It is well settled that in eminent domain proceedings it is the interlocutory decree which determines the rights of the parties and fixes the amount of compensation to be paid by the condemner. Although termed an "interlocutory judgment," it is final for purposes of appeal. (*City of Santa Barbara* v. *Superior Court* (1966) 240 Cal.App.2d 612, 614 [49 Cal.Rptr. 798]; *S.F. Unified School Dist.* v. *Hong Mow* (1954) 123 Cal.App.2d 668, 670 [267 P.2d 349].)

Relying on *City of Oakland* v. *Williams* (1924) 67 Cal.App. 701 [228 P.669], the Agency argues that since no appeal was taken from the

---

[1]Code of Civil Procedure section 1263.510 provides: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner. [¶] (b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

[2]Although Dennis Irving is nominally a party to this appeal, the sole issue presented here for our review pertains to the business, Baldwin Auto Wreckers and Parts, owned and operated by Megan Irving (hereinafter referred to as defendant).

interlocutory decree within the time limits prescribed by rule 2(a) of the California Rules of Court, the judgment had become final several weeks before defendant filed her notice of appeal. The Agency concludes, of course, that this court is without jurisdiction and has no choice but to dismiss the appeal. We disagree.

Rule 2(a) of the California Rules of Court provides as follows: "Except as otherwise specifically provided by law, a notice of appeal shall be filed within 60 days after the date of mailing notice of entry of judgment by the clerk of the court pursuant to section 664.5 of the Code of Civil Procedure, or within 60 days after the date of service of written notice of entry of judgment by any party upon the party filing the notice of appeal, or within 180 days after the date of entry of the judgment, whichever is earliest, unless the time is extended as provided in rule 3."

Here, the record reveals that neither the Agency nor the clerk served a notice of entry of the interlocutory judgment on defendant. As a result, defendant had 180 days from August 20, 1982, the date of entry of the interlocutory decree, within which to file a notice of appeal. Consequently, the notice filed December 9, 1982, was timely if the reference to the wrong order is not fatal.

█ The rule has long been established that an incorrectly framed notice of appeal will be construed to refer to the correct appealable order assuming that the intention of the appellant is clear. (*City of Los Angeles* v. *Aalbers* (1977) 67 Cal.App.3d 80, 82-83 [136 Cal.Rptr. 396], see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 335, 336, pp. 4312-4315.) Based upon our review of the record, we have no difficulty ascertaining defendant's intention; neither, we are sure, does the Agency. It is manifest that the Agency has suffered no prejudice and would not have proceeded differently had defendant properly identified her appeal as being from the interlocutory decree of condemnation rather than the final judgment.

Having concluded that the Agency's position is without merit, we now turn to the substantive issues posed by defendant's appeal.

The subject property, situated in the northwest corner of the City of Baldwin Park, consists of two parcels approximately 6.2 acres in size. Surrounded largely by unimproved realty, the majority of the property—roughly four acres—was occupied and used by Baldwin Auto Wreckers and Parts as a "junk yard." The remaining acreage served as a place of business for Baldwin Towing Service, owned and operated by defendant Dennis Irving.

For the most part, Baldwin Auto Wreckers engaged in the acquisition and dismantling of automobiles for eventual sale as parts and/or scrap metal.

Except for several crudely constructed structures and a trailer, the property itself contained some 400 vehicles in various stages of disrepair. These vehicles and their component parts constituted the "inventory" of the business.

Operating from its Baldwin Park location since 1953, the business derived the vast majority of its customers from the local community and from those living within a 12-mile radius of the property. Approximately 80 percent of the company's total sales was directly attributable to repeat business.

When defendant was notified by the Agency of the proposed taking, she commenced a search for the purpose of locating a replacement site upon which to continue the business. The search initially was limited to the immediate area of the subject property, but was gradually enlarged beyond the geographic radius from which the vast majority of business was generated. Despite defendant's extensive efforts, no sites were discovered which could be adapted for use by the company.

Based upon the foregoing, the trial court, during the legal issue phase of the proceedings, concluded that Baldwin Auto Wreckers and Parts possessed a goodwill value which would be lost by the taking of the subject property, and that such loss could not have been reasonably prevented.

As previously noted, immediately prior to the valuation trial, defendant offered to prove that the replacement value of the inventory was $312,000, without considering profit, and that because of her inability to relocate the business she was required to sell her stock at scrap value for approximately $50,000. Sometime after the condemnation proceedings were commenced, the Agency warned defendant that if the inventory was not disposed of, it would charge back to the business the cost of removing the automobiles and parts from the premises. The Agency's motion to exclude such evidence was, of course, granted and the matter proceeded to trial.

The essential question to be resolved on this appeal is whether the condemner's conduct entitles defendant to an award of damages for the value of her business inventory less the amount obtained at the salvage sale. The Agency maintains that such personal property is, as a matter of law, noncompensable in an action for condemnation of real property and that as a consequence defendant may not be indemnified for the loss allegedly incurred here. We have concluded, however, that since the condemnatory act in and of itself resulted in the devaluation of her stock in trade, she is entitled to be compensated for the loss of the property in question.

The power of government to take private property against the wish of the owner has ancient antecedents. Properly called expropriation, this

taking is referred to in the Bible, was practiced by the Romans, restricted by the Magna Carta, and assumed to exist by the Bill of Rights. Under the United States Constitution and the California Constitution, article I, section 19, however, just compensation is required when property has been "taken or damaged."

As we recently noted in *City of Los Angeles* v. *Tilem* (1983) 142 Cal.App.3d 694, 702 [191 Cal.Rptr. 229], "[t]he concept of 'taking' has with time changed from the notion of a physical seizure to that of a diminution of the owner's rights and attributes of ownership. The question in eminent domain proceedings therefore is not what the taker has gained, but what the owner has lost. (See *People* v. *La Macchia* (1953) 41 Cal.2d 738 [264 P.2d 15]; *City of Los Angeles* v. *Property Owners* (1982) 138 Cal.App.3d 114, 120 [187 Cal.Rptr. 667]; *United States* v. *General Motors Corp.* (1945) 323 U.S. 373, 377-378 [89 L.Ed. 311, 318, 65 S.Ct. 357, 156 A.L.R. 390]; *Agins* v. *Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25], affd. 477 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138] [1980].)"

■  The ultimate goal in any condemnation proceedings is, of course, to determine constitutionally required "just compensation." (*Redevelopment Agency* v. *First Christian Church* (1983) 140 Cal.App.3d 690, 697 [189 Cal.Rptr. 749].)  ■  It has long been recognized that neither federal nor state constitutional provisions make any distinction between real property and personal property with respect to this requirement. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 67 [183 Cal.Rptr. 673, 646 P.2d 835]; *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50 [67 Cal.Rptr. 665].) In 1975, California's eminent domain statutes received extensive revision and recodification (see Code Civ. Proc., § 1230.010 et seq.). As presently defined in Code of Civil Procedure section 1235.170, " 'Property' includes real and personal property and any interest therein." The Law Revision Commission comment notes that "Section 1235.170 is intended to provide the broadest possible definition of property and to include any type of right, title or interest in property that may be required for public use."

Contrary to the Agency's contention here, if the state takes or damages personal property in the exercise of its power of eminent domain, it is obligated to pay just compensation to the owner. (*City of Oakland* v. *Oakland Raiders, supra,* 32 Cal.3d at p. 68; also see Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stan. L.Rev. 727; 4 Nichols, The Law of Eminent Domain (rev. 3d ed. 1973) § 13.13, pp. 13-71—13-76.)

■  The law in California and elsewhere has long recognized compensable consequential damage to property rights which, while not actually

"taken," are damaged or destroyed by the physical appropriation of a portion of the owner's property. (See *Kimball Laundry Co.* v. *U.S.* (1949) 338 U.S. 1 [93 L.Ed. 1765, 69 S.Ct. 1434, 7 A.L.R.2d 1280]; *Southern Calif. Edison Co.* v. *Railroad Com.* (1936) 6 Cal.2d 737 [59 P.2d 808]; *People* ex rel. *Dept. Public Works* v. *Giumarra · Vineyards Corp.* (1966) 245 Cal.App.2d 309 [53 Cal.Rptr. 902]; 4A Nichols, Eminent Domain, § 14.1, pp. 14-3—14-6.)[3] There seems to be no logical reason why that principle should not apply with equal force where, in condemning real property, personal property, though not "taken," is damaged or its value destroyed.

Of course, if personal property which is located on the real property can simply be picked up and moved without loss to the property owner then the condemning Agency takes and pays for only the land and fixtures. In the latter situation the condemner has not taken or damaged the personal property. But that is not the same as saying that such personal property is never compensable when it has been taken or damaged as a result of condemning the underlying real property. (See 4 Nichols, Eminent Domain, § 13.13, pp. 13-71—13-73.)

Where the removal or relocation of either tangible or intangible personal property, under the circumstances of the particular case, is made impossible by the condemnatory act itself, then the owner's just compensation should not be limited by an arbitrary notion that in eminent domain any particular form of recognized property right is noncompensable. (Cf. *Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 834 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].)

"This is so because, as was said in *People* v. *Superior Court* [1956] 145 Cal.App.2d 683, 690 [303 P.2d 628], hearing denied, the constitutional concept of just compensation expresses a principle of fairness. If any compensable constituent element of value, . . . is omitted in arriving at just compensation this constitutional mandate has not been met. [Citations.] Every rule of condemnation law, be it statutory or decisional, for determining the value of land taken in condemnation, must in its every application conform to this constitutional mandate. [Citations.]" (*People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.* (1967) 253 Cal.App.2d 870, 883 [62 Cal.Rptr. 320].)

---

[3]It is generally recognized that the "damaged" language was added to our state Constitution to broaden the "taking" language found in the Fifth Amendment to the United States Constitution. The California Supreme Court also has noted that the technical distinction between "taking and damaging" has, for the most part, been blurred and that the terms are generally interchangeable. (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 652-654 [131 Cal.Rptr. 646, 552 P.2d 430]; see also *City of Los Angeles* v. *Tilem, supra,* 142 Cal.App.3d at pp. 701-702.)

Relying heavily, if not completely, on *Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d 813, the Agency insists that personal property not affixed to the realty cannot form an element of compensation under constitutional provisions assuring "just compensation" when the realty is taken through eminent domain. It is further asserted that this "rule" applies regardless of whether the subject personal property is rendered essentially valueless by condemnation of the realty. In particular, the Agency directs our attention to the following language found in *Abrams*: "No case has been cited to us or has been found as a result of our study which would justify departure . . . from the universal rule denying compensation for movable, nonaffixed personal property on condemned realty." (*Id.,* at p. 834, fn. omitted.)

Although at first blush it may appear that the Agency's arguments are supported by *Abrams,* we are of the opinion that the position advanced by defendant is in accord with the court's holding.

In *Abrams,* the real property upon which a pharmacy was located was condemned as part of a massive community redevelopment project. The owner, a 64-year-old pharmacist, was unable to relocate to a new area by reason of his age and numerous physical afflictions. Moreover, the market for his stock of "ethical drugs" (i.e., drugs which cannot be sold without a prescription) had been rendered valueless by reason of the prohibitive cost of procedures required to sell them to other pharmacies. The trial court awarded Abrams $10,000, the stipulated value of the drugs, in addition to the value which the jury placed on the real property and fixtures. The Supreme Court reversed, holding that the award of compensation on a constitutional basis was inappropriate because it was the *personal circumstances* of the condemnee himself, specifically his age and physical condition, rather than the *condemnatory act itself,* which brought about the devaluation in question.

Here, the inability to relocate was the result of the nature of the business and the lack of any appropriately zoned property within a reasonably accessible area. Hence the act of condemnation of the only available location directly caused the loss.[4]

Taking another cue from *Abrams,* the Agency further argues that the relocation assistance act (see Gov. Code, § 7260 et seq.) was intended

[4]That the public entity sought to condemn only real property is not determinative on the question of whether the public entity took or damaged personal property in the process of condemning the real property. Nor is it necessary that the public entity devote the personal property in question to public use. The fundamental question is whether in fact the exercise of governmental power results in the taking or damaging of personal property. (*Sutfin* v. *State of California, supra,* 261 Cal.App.2d at pp. 55-57.)

to be the exclusive remedy for the recovery of losses connected to the displacement of inventory and that defendant, having failed to avail herself of the act's provisions, may not be compensated for such losses in an eminent domain proceeding. We cannot agree.

Government Code section 7262 provides that as a cost of the acquisition of real property for a public use, a public entity shall compensate a displaced person for (1) expense of moving the business, (2) expense in searching for a replacement business, (3) actual direct losses of tangible personal property as a result of moving or discontinuing a business, "but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, *as determined by the public entity.*" (Gov. Code, § 7262, subd. (a)(2); italics added.)

In lieu of such compensation the owner of a business who is displaced by a condemnation action may elect to accept a lump sum payment based on annual net earnings not to exceed $10,000. This option, however, is conditioned on the *public agency being satisfied* that the business cannot be relocated without substantial loss of patronage. (See Gov. Code, § 7262, subd. (c).)

This statute appears to us to be legislative recognition of the need to compensate for certain business losses which occur as a result of a condemnation action but contemplated that such compensation be independent of the condemnation proceedings. (See *City of Mountain View* v. *Superior Court* (1975) 54 Cal.App.3d 72 [126 Cal.Rptr. 358].) The act nonetheless evidences considerable "hedging" by the Legislature in giving the *Agency* the fact-finding power on the issue of relocatability and in limiting absolutely the amount of compensation available.

Further, Government Code section 7270 provides that nothing in these provisions shall be construed as creating in any condemnation proceeding any element of damages not in existence on the date of the enactment. Section 7274 specifically provides that these provisions create no rights or liabilities whatsoever.

Based upon the foregoing, we think it clear that the relocation assistance act is not an adequate substitute for the constitutional requirement of just compensation. Nothing in *Abrams* compels a contrary view. ▪ Just compensation means the full and perfect equivalent in money of the property taken or damaged. Its owner is to be put in as good a position pecuniarily as he would have occupied if his property had not been taken or damaged. (*United States* v. *Miller* (1942) 317 U.S. 369, 373 [87 L.Ed. 336, 342, 63 S.Ct. 276, 147 A.L.R. 55].) In short, just compensation is based on the

loss the owner suffers rather than the benefit which the taker receives. What is to be valued for that purpose is what the involuntary seller has to sell rather than what the public buyer seeks to acquire. (*County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].)

The process of determining "just compensation" is purely a judicial function which cannot be circumscribed by the Legislature. When the state through its executive arm takes or damages private property, be it real or personal, it cannot through its legislative arm limit the price it will pay or the manner of its payment. (*Monongahela Navig'n Co.* v. *United States* (1893) 148 U.S. 312 [37 L.Ed.463, 13 S.Ct. 622]; *United States* v. *New River Collieries* (1923) 262 U.S. 341 [67 L.Ed. 1014, 43 S.Ct. 565]; *Beals* v. *City of Los Angeles* (1943) 23 Cal.2d 381 [144 P.2d 839]; *County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) As we view it, an arm's length bargain-seeking posture on behalf of a condemning agency in dealing with a property owner is really contrary to the spirit of our Constitution.

We can only conclude that nothing in the relocation assistance act, except for the general prohibition against double recovery, may restrict or limit a property owner's right to recover just compensation for losses to business inventory incurred as a direct result of the state's exercise of the power of eminent domain.

The trial court's finding that the business could not reasonably be relocated leads to the conclusion that the case must be remanded for further proceedings to afford defendant the opportunity to establish the amount of damages occasioned by the diminution in value of the inventory in question.

The judgment is reversed in part and the cause is remanded to the trial court to proceed with the disposition thereof in conformity with the views expressed herein.

Roth, P. J., and Gates, J., concurred.

A petition for a rehearing was denied June 13, 1984, and respondent's petition for a hearing by the Supreme Court was denied July 26, 1984.