[No. D014814. Fourth Dist., Div. One. Oct. 1, 1992.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
CABRILLO LANES, INC., Defendant and Appellant.

COUNSEL

Goebel & Shensa and Louis E. Goebel for Defendant and Appellant.

Jennings, Engstrand & Henrikson and Bruce W. Beach for Plaintiff and Respondent.

OPINION

**KREMER, P. J.**—Cabrillo Lanes, Inc. (Cabrillo) appeals a judgment awarding compensation in an eminent domain action. On appeal, Cabrillo contends the court erred by excluding some items from the compensation award, by selecting the wrong valuation date and by allowing expert testimony on an improper appraisal approach. We affirm.

FACTS

On May 16, 1985, the County of San Diego (County) filed a condemnation action to acquire property for a trolley station. Cabrillo was a tenant on the property operating a bowling alley.

In July 1985, the County deposited $1.4 million as probable compensation with the County Treasury pursuant to Code of Civil Procedure[1] section 1255.010, subdivision (a). On July 11, 1985, the court issued an order for possession of the property.

The court authorized the owners of the property to withdraw some of the $1.4 million deposited. In July 1987, the County and owners of the property settled, with the County agreeing to pay the property owners compensation of $2,015,627 plus interest less the money already withdrawn. All parties, including Cabrillo, agreed to allow the property owners to withdraw the remaining amount of money deposited by the County.

Although the County had an order for immediate possession of the property, it agreed Cabrillo could continue in operation until April 30, 1990. The County and Cabrillo anticipated Cabrillo would relocate its business. The County and the City of Chula Vista assisted Cabrillo in the relocation effort and located six to eight sites in the same general region served by Cabrillo, several of which were acceptable to Cabrillo. The County investigated and was prepared to absorb the cost of relocating the equipment of the bowling alley. Cabrillo, however, decided not to relocate.

The case proceeded to trial on the compensation issue. At trial, Cabrillo asserted the value of the improvements to be $580,000 and the loss of goodwill to be $264,584. The County argued the improvements were worth $213,000 and the lost goodwill was worth $70,000. The jury returned a verdict of $230,000 for the improvements and $125,000 for the goodwill.

DISCUSSION

I

*Valuation Date*

Cabrillo contends the court erred in fixing the valuation date as June 30, 1990, when Cabrillo turned over possession of the premises to the County, rather than July 11, 1985, when the County obtained the order for possession of the property and deposited funds to compensate for the taking.

Three property interests were at issue in this eminent domain action: (1) the real property interest of the owners; (2) Cabrillo's improvements to the real property; and (3) Cabrillo's lost goodwill. The real property was valued as of the date of the deposit in July 1985. Cabrillo's goodwill was valued as

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

of May 1985, a date with which Cabrillo has no quarrel. The disagreement here solely concerns the valuation date for Cabrillo's improvements to the realty.

Cabrillo argues since the County deposited funds and obtained an order of possession in July 1985, section 1263.110, subdivision (a) governs and the valuation date for the improvements pertaining to realty must be the date the deposit was made.

Section 1263.110, subdivision (a) provides:

"Unless an earlier date of valuation is applicable under this article, if the plaintiff deposits the probable compensation in accordance [with the statutory procedures], the date of valuation is the date on which the deposit is made.

"Whether or not the plaintiff has taken possession of the property or obtained an order for possession, if the court determines . . . that the probable amount of compensation exceeds the amount previously deposited . . . and the amount on deposit is not increased accordingly within [the applicable time limits], no deposit shall be deemed to have been made for the purpose of this section."

■ Cabrillo's argument presumes the July 1985 deposit was to provide compensation for its improvements to the real property. The record, however, does not support this conclusion. The evidence in the record indicates the July 1985 deposit was intended to provide the probable compensation to the property owner and not to the tenant Cabrillo.

The record shows the County deposited $1.4 million for probable compensation in July 1985. The value was determined by a real estate appraiser. The appraiser assessed the value of the real property, not the tenant improvements.[2] The entire amount of the deposit was eventually withdrawn by the property owners; none of the deposit was withdrawn by Cabrillo. Cabrillo expressly stipulated to the property owner's withdrawal of the last funds

---

[2]In his summary of appraisal filed with the court at the same time as the notice of deposit, the appraiser stated: "I have taken appraisal courses, have appraised numerous types of *real property* in the County of San Diego, and am currently a member in good standing of the American Institute of *Real Estate* Appraisers (MAI). [¶] I have investigated *comparable sales*, reviewed the proposed project, inspected the subject property and made an appraisal thereof." (Italics added.)

deposited.[3] Because the deposit was to provide probable compensation for the real property and not for Cabrillo's improvements to the realty, the date of the deposit does not determine the valuation date for the improvements to the realty.

The Eminent Domain Law provides as alternate valuation dates to the date of deposit the date of the commencement of the proceedings if trial occurs within one year (§ 1263.120) (which is not the case here) or the date of trial if the trial begins more than a year after the commencement of the proceedings (§ 1263.130). Additionally, the County points to section 1263.230 which concerns the allocation of risk for improvements that are removed or destroyed. We believe section 1263.230 also provides guidance on selecting a valuation date.

Section 1263.230 provides:

"(a) Improvements pertaining to the realty shall not be taken into account in determining compensation to the extent that they are removed or destroyed before the earliest of the following times:

"(1) The time the plaintiff takes title to the property.

"(2) The time plaintiff takes possession of the property.

"(3) If the defendant moves from the property in compliance with an order for possession, the date specified in the order; except that, if the defendant so moves prior to such date and gives the plaintiff written notice thereof, the date 24 hours after such notice is received by the plaintiff.

"(b) Where improvements pertaining to the realty are removed or destroyed by the defendant at any time, such improvements shall not be taken into account in determining compensation. Where such removal or destruction damages the remaining property, such damage shall be taken into account in determining compensation to the extent it reduces the value of the remaining property."

Of the three different valuation dates listed in section 1263.230, subdivision (a)(3) is clearly not applicable here since Cabrillo did not relocate in response to the July 1985 order of possession. Cabrillo continued in possession for nearly five years after the July 1985 order was issued.

---

[3] At oral argument, it was brought out that the County, at Cabrillo's insistence, deposited funds for its probable compensation at the beginning of trial. The timing of this deposit also tends to support a conclusion the July 1985 deposit was probable compensation for the real property rather than for the improvements.

Thus, under section 1263.230 we are left with two alternatives: (1) the time when the County took title and (2) the time when the County took possession. Here, the County acquired title to the property after the trial was completed and the final order of compensation was recorded. (See § 1268.030.) The County acquired possession on June 30, 1990. Because of the depreciating nature of the property involved here, an earlier date was to Cabrillo's advantage. Thus, between the date of possession and date of title, it was to Cabrillo's advantage to have the possession date (June 30, 1990) used as the valuation date rather than the posttrial date of title. We also note the date of possession is also more favorable to Cabrillo than the alternate valuation date of section 1263.130, i.e., the date trial commenced, October 1990. Cabrillo received the benefit of the most favorable valuation date.

We conclude the valuation date selected by the court, June 30, 1990, was a correct valuation date to use for the improvements pertaining to realty. No reversal is merited on this ground.

## II

### *Exclusion of Items From Compensation*

Cabrillo contends the court erroneously excluded items from the jury's consideration for compensation.

In 1985 the parties completed a 13-page inventory of personal property in the bowling alley. The items ranged from the bowling lanes and equipment to air conditioning equipment to cups and saucers and desks. The parties disputed whether the County was required to compensate for all or only some of the items on this list. The trial judge used the 13-page inventory and viewed the premises to determine which items were compensable. The trial judge looked to whether "something that is attached there that there will be substantial damage if it is pulled out." The court excluded movable items of personal property such as the cups and saucers and desks.

Cabrillo contends all the items on the list were "improvements pertaining to the realty" which were required to be compensated pursuant to section 1263.205.

Section 1263.205 provides:

"(a) As used in this article, 'improvements pertaining to the realty' include any machinery or equipment installed for use on property taken by eminent domain, or on the remainder if such property is part of a larger

parcel, that cannot be removed without a substantial economic loss or without substantial damage to the property on which it is installed, regardless of the method of installation.

"(b) In determining whether particular property can be removed 'without a substantial economic loss' within the meaning of this section, the value of the property in place considered as a part of the realty should be compared with its value if it were removed and sold."

Cabrillo's argument is that all the items on the 13-page inventory were items that were on the premises because of the operation of the bowling alley, were integral to the bowling alley and therefore were "improvements pertaining to realty." Since Cabrillo did not relocate, Cabrillo argues these items had to be liquidated which would result in "a substantial economic loss."

█  The general rule is that the Constitution does not require compensation for personal property not affixed to the condemned realty. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 835 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].) Movable items of personal property are not "taken" by the public entity when it condemns real property or a business; instead, under the Relocation Assistance Act (Gov. Code, § 7260 et seq.), the public entity compensates the owner for the cost of moving the personal property to a new site. (Gov. Code, § 7262, subd. (a)(1), (2).)

Cabrillo points to the Legislative Committee Comment to section 1263.205 which explains:

"Section 1263.205 supersedes the provisions of former Section 1248b which applied only to equipment designed for manufacturing or industrial purposes. Section 1263.205 applies to machinery as well as to equipment and applies whether or not they are used for manufacturing or industrial purposes. *Equipment includes, for example, but is not limited to, furniture of a motel or restaurant where such furniture cannot be removed without substantial economic loss.*" (Italics as added by Cabrillo.)

█  Cabrillo suggests the emphasized language shows an intent to include movable personal property within the definition of "improvements pertaining to realty" whenever removal of the property causes a "substantial economic loss," including when a condemnee suffers a loss for liquidating the property rather than continuing to use it in the business at a new location. We do not read the quoted language so broadly. As the trial court noted, restaurant and motel furniture may be built in, and so specific to one location

that substantial economic loss occurs in its removal. In other words, some furniture in restaurants and motels may not truly be "movable" to another location; such furniture is an improvement pertaining to realty. We note the trial court included such furniture at the bowling alley; the court, for example, included the bowling alley's seats with drink racks (with or without ashtrays) and booths from the coffee shop in the list of items to be compensated.

We are not persuaded by Cabrillo's argument that because the Legislative Committee Comment included some furniture as "improvements pertaining to realty" we must conclude all furniture and all movable personal property was intended to be included within the definition of "improvements pertaining to realty." The cited examples of furniture in the Legislative Committee Comment, in our opinion, shows only a Legislative recognition that certain site-specific types of furniture found in businesses like restaurants and motels may be included within the definition of "improvements pertaining to realty"; not a legislative determination that all furniture and movable items are "improvements pertaining to realty."

Cabrillo also relies on *Baldwin Park Redevelopment Agency* v. *Irving* (1984) 156 Cal.App.3d 428 [202 Cal.Rptr. 792], to support its argument it was entitled to compensation for all of its business inventory and the court erred in looking to see whether the items were "attached" to the property or were movable in determining whether the items were "improvements pertaining to realty" which would suffer "substantial economic loss" if removed from the premises.

In *Baldwin*, the court awarded compensation for the business inventory of Baldwin Auto Wreckers. The business consisted primarily of acquiring and dismantling cars for eventual sale as parts and/or scrap metal. The business inventory consisted of approximately 400 vehicles in various stages of disrepair. The owner, despite extensive efforts, was unable to find any appropriately zoned property within a reasonably accessible area. The *Baldwin* court held the owner should be compensated for the business inventory of vehicles because the condemnatory act itself caused the loss by condemning the only available location for the business. In reaching its decision, the *Baldwin* court distinguished *Community Redevelopment Agency* v. *Abrams*, *supra*, 15 Cal.3d 813.

In *Abrams*, the Supreme Court held a pharmacy owner was not entitled to compensation for his business inventory of "ethical drugs" which were essentially rendered valueless by the condemnation because the owner was incapable of relocating his business due to his age and physical condition. The *Abrams* court noted:

"In the instant case, . . . the act of condemning the property upon which defendant conducted his business did not *in and of itself* result in the loss of value of which defendant complains. Rather, . . . it was the personal circumstances of the condemnee himself—specifically his age and physical condition—which operated to prevent his transfer of his 'ethical drugs' to a new location and his realization of their value at that new location." (*Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d 813, 834, italics in original.)

Cabrillo fails to address the *Abrams* case and implicitly dismisses it as a case decided before the adoption of section 1263.205 defining "improvements pertaining to realty." The *Baldwin* case, on which Cabrillo so heavily relies for its broad reading of section 1263.205, however, specifically adopted the *Abrams* distinction between a loss to business inventory due to the personal circumstances of the condemnee himself and a loss due to condemnatory act in and of itself. (*Baldwin Park Redevelopment Agency* v. *Irving, supra,* 156 Cal.App.3d 428, 437.) Thus, *Baldwin* does not, as Cabrillo suggests, stand for the proposition that whenever a condemnee fails to relocate his business he is entitled to compensation for economic losses caused by liquidating inventory.

Cabrillo's situation is dissimilar to that present in *Baldwin.* Here, the County located six to eight alternate sites for Cabrillo's business, several of which were acceptable to Cabrillo. Below, Cabrillo never argued it was unable to relocate because the condemnatory act caused the loss of the only available location for the bowling alley. Cabrillo argued "that *all* property, regardless of how installed, and regardless of ability to relocate the property to minimize substantial economic loss, are improvements pertaining to realty based solely on whether Cabrillo Lanes intends to remove or not remove the property, or continue or discontinue its business operation." Clearly, this is not the law. Under *Baldwin,* the County is required to compensate a condemnee for economic losses relating to movable personal property only when the condemnatory act in and of itself, rather than the personal circumstances of the condemnee, causes the failure of relocation.

Here, on appeal, Cabrillo cites no evidence showing its decision not to relocate was strictly due to the condemnatory act. Testimony at trial indicates there were other sites available for a bowling alley after the County condemned the property where the Cabrillo bowling alley was located. Cabrillo entered negotiations for more than one site. Cabrillo entered escrow on one site. At the time of trial, another company had entered into escrow for that site with the intent of building a bowling alley.

We conclude the trial court, using a correct standard, properly excluded some items from the jury's consideration for compensation.

## III

### *Appraisal of Property*

Cabrillo contends the court erred in allowing the County's appraiser to testify to an impermissible appraisal approach which was based on an assumption "the items of property were dismantled, removed from the property, and sold away."

█ Here, the County's expert used two approaches to determine the fair market value of the property items. The expert considered the cost of the items new less depreciation and considered what the items would sell for used. The first method resulted in a figure of $324,000. The second method resulted in a figure of $108,000. The expert then testified to his opinion the fair market value of the items was $213,000. The jury awarded Cabrillo $230,000.

Cabrillo concedes an appraiser may use a combination of approaches to arrive at an intermediate appraisal of fair market value, but asserts the expert's opinion here was "mortally infected" by his reliance on the second approach based on selling the items. Cabrillo asserts "[t]his violates Evidence Code § 822(5)."

Evidence Code section 822, subdivision (a)(5) provides:

"In an eminent domain or inverse condemnation proceeding, notwithstanding the provisions of Sections 814 to 821, inclusive, the following matter is inadmissible as evidence and shall not be taken into account as a basis for an opinion as to the value of property:

". . . . . . . . . . . . . . . . . . . . . . . . .

"The influence upon the value of the property or property interest being valued of any noncompensable items of value, damage, or injury."

The County's expert did not base his opinion on noncompensable items of value, damage, or injury. The expert merely looked at the cost of the items on the used market. While acknowledging the cost of some used items takes into account the expenses involved in removing and relocating the item, the expert did not base his ultimate opinion of the fair market value on the used cost of the items; he used the cost of the items on a used market only to establish the low end of fair market value. We do not find it improper for an appraiser to establish a low end of the fair market value of an item by

looking to what it would cost on the used market. No reversal is merited on this ground.

DISPOSITION

The judgment is affirmed.

Wiener, J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 16, 1992.