Filed 6/22/21  In re MaryJane L. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MaryJane L., a Person Coming Under the Juvenile Court Law. | B307501<br>(Los Angeles County<br> Super. Ct. No. DK23383) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSICA L.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Jessica L. (mother) appeals from orders of the juvenile court summarily denying her Welfare and Institutions Code section 388 petition for a change of order over her child, MaryJane L., and terminating her parental rights.[1]  Mother contends that the court abused its discretion by summarily denying her section 388 petition without holding an evidentiary hearing.  Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *Detention, Jurisdiction, and Adjudication*

In June 2017, the Los Angeles County Department of Family and Children Services (DCFS) filed a section 300 petition on behalf of Victoria L. (born Jan. 2008), MaryJane L. (born Sept. 2012), and K.C. (born March 2016), based on mother's "paranoia and bizarre behaviors," and her history of marijuana and methamphetamine use.[2]  According to maternal grandfather, mother had moved the children into different homes after saying the devil and witches were after them.

The children were recovered in July 2017 with the assistance of Edmundo L., a companion of mother who had provided shelter for her

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    DCFS subsequently filed two amended petitions to add accusatory language with respect to father, Kelvin C., who is not a party to this appeal. Based on the limited issues presented in her appellate briefs, we previously dismissed mother's appeal as to Victoria L. and K.C.  We limit our recitation of the facts to MaryJane, the only child subject to this appeal.

and the children. Days after the children were released to mother under a court-approved safety plan, mother informed DCFS that she could not secure adequate housing. The court removed the children and placed them with paternal grandmother, Maria C., with unmonitored weekly visitation ordered for mother. After the August 2017 detention hearing, mother did not visit the children or assist them with school, medical care, clothing, or food.

In several reports submitted in September and October 2017, DCFS reported that MaryJane cried when mother did not visit. In her own interview, mother admitted that she had seen a psychiatrist in 2015 for depression and anxiety. When informed that maternal grandfather wished to visit the children, mother alleged she had been physically and sexually abused by him as a child.[3] She added, "I would never put trust for my side of my family" and would "not trust her own maternal relatives to care for her children."

In May 2018, mother's therapist reported that she had diagnosed mother with post-traumatic stress disorder (PTSD) due to mother's reports of sexual abuse. The therapist provided mother with assistance twice per month.

At the adjudication hearing on August 10, 2018, the court sustained two section 300, subdivision (b) counts as to mother, ordered the children removed, and ordered mother to participate in

---

[3]     Maternal grandparents denied the allegations and reported that mother had made rape allegations against others in the past.

reunification services and a psychiatric evaluation.[4]  The court granted mother monitored visitation.

2.  *Reunification and Permanency Planning*

DCFS reported that between August 2018 and February 2019, mother visited the children sporadically because of her unstable work schedule.  When mother visited with the children, MaryJane tended to disregard Maria's guidance.  Due to her young age, MaryJane idolized mother; "regardless of any past actions, she wants the mother in her life."  As of February 2019, mother had not enrolled in any drug or alcohol program, she often failed to submit to drug testing, and she refused to provide DCFS with a home address.  Mother agreed that adoption by Maria was the best permanent plan moving forward.

Mother agreed to terminate her reunification services at the six-month review hearing on February 8, 2019.  The court set, then continued, the section 366.26 hearing to August 26, 2020.

The court received the results of mother's psychiatric evaluation on February 27, 2019.  The evaluation stated that mother met the

---

[4]     The court sustained b-1 and b-2 counts based on mother's mental and emotional problems, and her history of marijuana use, each of which placed the children at risk of serious physical harm and damage. The court struck language regarding mother's use of methamphetamine.

Mother was ordered to participate in the following reunification services: full drug/alcohol program with after care, weekly random or on-demand drug/alcohol testing; parenting education; mental health counseling; a psychological assessment; a psychiatric evaluation; and individual counseling to address sexual abuse and protective parenting.

criteria for PTSD based on reported childhood abuse. Some of the symptoms mother exhibited were flashbacks, anxiety and vigilance, negative cognitions about the intentions of others, and avoidance of situations or people that reminded her of prior trauma. Mother had last seen a therapist in August 2018, and said that when she sought to confide in her cousin about her past abuse, the cousin "told everyone in the family that I was crazy and that I was making up stories." The evaluation recommended the resumption of treatment for PTSD, as well as future evaluations by a treating psychiatrist if mother displayed signs of mood or anxiety disorder. Given the possibility that mother was not forthcoming about her marijuana use, the evaluation did not rule out the possibility that mother suffered from "Cannabis Use Disorder."

In a section 366.26 report and addendum report filed on June 7, 2019, DCFS reported that Victoria, MaryJane, and K.C. were adoptable, Maria wished to adopt the children, and Maria had been approved as a resource family. Meanwhile, mother's visits had been inconsistent and unpredictable. Mother had recently given birth to her fourth child, M.L., and the child had been removed under a sustained section 300 petition based on mother's PTSD diagnosis, substance abuse history, and her history of domestic violence with M.L.'s father, Edmundo.

Mother was arrested on August 26, 2019, for trafficking 16.5 pounds of heroin and 25 grams of cocaine into the United States from Mexico. Mother used her own car to smuggle the drugs, and was arrested alongside Edmundo's cousin, who admitted to police that he

had previously smuggled drugs with mother across the border.[5]  Mother was held in an Arizona detention facility until October 2019, when she was released on pretrial supervision.  If convicted, mother was looking at a significant prison sentence.  In April 2020, DCFS was informed that mother would soon have to turn herself into custody.  At that point in time, mother had not been forthcoming about her criminal case, and had not made telephonic or in-person contact with the children.

The children continued to live comfortably in Maria's home.  Both Victoria and MaryJane looked forward to moving into a bigger home with Maria's family, and though MaryJane missed mother, she and her siblings stopped inquiring about mother's whereabouts.  MaryJane, who had received wraparound services, had met her therapeutic goals and was no longer in therapy.

3.     *Section 388 Petition and Section 366.26 Hearing*

On August 24, 2020, mother filed a section 388 petition requesting reinstatement of reunification services or placement of MaryJane (and her other children) in her care.[6]  Attached to the petition was a letter from mother to the DCFS grievance department wherein mother stated that she had a permanent place of residence in her grandparents' home,

---

[5]     The Department of Homeland Security reported that between May 2018 and August 2019, mother had crossed the United States and Mexico border 22 times, including several crossings with Edmundo and his cousin.

[6]     Mother filed three separate section 388 petitions on behalf of Victoria, MaryJane, and K.C.

which had an extra room for the children. Despite the possibility of incarceration, mother was exploring a court-ordered program that would enable her to stay at home and continue therapy, drug testing, and other programs. If she were incarcerated, mother had "a placement and safety plan where my children will reside with family until my return." Mother alleged she had completed parenting classes, domestic violence victim group therapy, drug testing, and individual therapy and drug counseling.

Also attached to mother's petition were certificates of completion for parenting education in June 2019 and domestic violence awareness education in July 2019, and an August 2020 letter from an officer with the United States Probation and Pretrial Services. The probation officer reported that mother was "currently under pretrial supervision [and] is currently participating in outpatient mental health services, outpatient substance use treatment, and is submitting to drug testing. [Mother] is actively participating and currently in good standing with her treatment."

At the section 366.26 hearing on August 26, 2020,[7] the court took judicial notice of all sustained petitions, case plans, reports, orders, and findings. Proceeding to mother's section 388 petition, counsel for mother argued that mother had established a prima facie case based on

---

[7]     At the hearing, the court first considered mother's section 388 petition as to M.L, after which it terminated mother's reunification services. Incorporating its reasons for denying mother's petition as to M.L., the court then proceeded to hear mother's petitions as to Victoria, MaryJane, and K.C.

her completing parenting education and domestic violence classes, testing clean four times on recent request, and being in good standing with her probation officer. Counsel argued that mother's good-standing status constituted prima facie evidence regarding mother's continuation of mental health services, substance abuse counseling, and drug testing. In response, DCFS noted that mother had not visited the children consistently, and had either failed to engage in individual counseling or did not provide an update on her progress.

The court denied mother's section 388 petition. In doing so, the court found mother had not established a prima facie showing of changed circumstances. Despite her ongoing issues with mental health and stability, mother had not provided any information on the therapy she was receiving through pretrial services. Mother also continued to have contact with Edmundo between November 2019 and February 2020 despite an ongoing court order protecting her from Edmundo.[8] The court also found that mother had failed to establish how the requested change was in MaryJane's best interest, as the child had been living in a stable placement with a caregiver willing to adopt the child.

Proceeding to the section 366.26 hearing, the court found that mother had not established a parental bond, and that MaryJane would suffer if returned to her care. Finding no exception to adoption, the

---

[8]      The record on appeal does not include any petitions, reports, or findings with respect to M.L.

court terminated mother's parental rights over MaryJane, and designated Maria as the child's prospective adoptive parent.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother's asserts the trial court abused its discretion by summarily denying her section 388 petition without holding an evidentiary hearing. She contends her petition established a prima facie showing of changed circumstances, and that reunifying with MaryJane was in the child's best interest. We disagree.

1. *Governing Law and Standard of Review*

Section 388 provides for modification of juvenile court orders when the moving party can demonstrate (1) a change of circumstance or new evidence, and (2) that the requested change is in the child's best interests. (§ 388, subd. (a)(1); *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).) The juvenile court must hold an evidentiary hearing on a section 388 petition only if the moving party makes a prima facie showing of both elements. (See Cal. Rules of Court, rule 5.570(d)(1), (f); *In re Marilyn H.* (1993) 5 Cal.4th 295, 310; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 (*G.B.*).)

While courts are to liberally construe section 388 petitions, "'[t]he prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citations.] The petition may not consist of 'general, conclusory allegations,'" and should include declarations or

9

other attachments demonstrating the showing to be made at an evidentiary hearing.  (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 7 (*Samuel A.*).)  In other words, a prima facie case "is not made . . . if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing." (*G.B., supra*, 227 Cal.App.4th at p. 1157; see *ibid.* [a "prima facie case is made if the allegations demonstrate that [the] two elements are supported by probable cause"].)

We review the denial of a section 388 petition for an abuse of discretion.  (*Stephanie M., supra*, 7 Cal.4th at p. 318; *Samuel A., supra*, 55 Cal.App.5th at p. 7.)  "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.]" (*Stephanie M., supra*, at pp. 318–319.)

2.   *Analysis*

When considering whether a section 388 petition has made a prima facie showing, courts consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (See *Samuel A., supra*, 55 Cal.App.5th at p. 7; *In re Mickel O.* (2011) 197

10

Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446–447.)

Here, there is no material dispute that MaryJane and her siblings were under dependency jurisdiction due to issues with mother's erratic behavior and mental health, her abuse of marijuana, and her inability to provide MaryJane stable housing. Mother asserts that her psychiatric evaluation constituted evidence that she did not have a substance abuse problem or psychotic disorder, and that she had secured stable housing for MaryJane. In mother's view, this evidence constitutes a change of circumstances.

We are not persuaded. Mother's psychiatric evaluation actually confirms one ground on which the court exercised dependency jurisdiction. The evaluation confirms that mother's PTSD causes anxiety and vigilance, negative cognitions about the intentions of others, and avoidance of situations or people that reminded her of prior trauma. Despite mother's intermittent therapy (first through individual therapy ending around August 2018, and then through pretrial services in August 2020), she continued to exhibit unstable behavior, culminating in her 2019 arrest for trafficking a large quantity of heroin. Such conduct could very well have jeopardized MaryJane's safety had the child been placed in her care. (See *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1079 ["[t]he question is whether the parent's mental illness and resulting behavior adversely affect[s] the child or jeopardize[s] the child's safety"].)

Nor can we discern a change in circumstances with regard to mother's ability to provide stable housing for MaryJane. Throughout

11

dependency, mother had either moved MaryJane from home to home, or had given up custody of the child because she was unable to provide adequate housing. Despite her concession that she could soon be incarcerated, mother suggested placing MaryJane in her care while living with maternal relatives, who mother asserts could care for the child during her incarceration. But mother's history with her relatives has been far from stable. Mother had previously stated that she would "never put trust" in her relatives to care for her children, and she accused her family of calling her crazy. Viewed in context, mother's suggested placements are anything but secure. (See *Samuel A.*, *supra*, 55 Cal.App.5th at p. 7.)

Even assuming mother had established a prima facie case of changed circumstances, mother has not demonstrated how undoing the prior order would be in MaryJane's best interests. Once the juvenile court terminates reunification services, the focus shifts from family reunification to protecting the child's need for permanence and stability. (See *In re J.H.* (2007) 158 Cal.App.4th 174, 182–183; see *Stephanie M.*, *supra*, 7 Cal.4th at p. 317 [the child's need for continuity and stability "'will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child'"].) Mother's petition asked the court to reinstate reunification services and/or return MaryJane to her care. The petition asserted only that mother could provide a safe and loving home for MaryJane; nothing mother said in her petition or attachments establishes a parental bond with the child. Mother had maintained little contact with MaryJane between August 2018 and February 2019, and had no contact (outside of one in-person

12

visit) between August 2019 and August 2020.  MaryJane's sadness about mother not visiting subsided with time, and the child no longer inquired about her whereabouts.

On the other hand, MaryJane was bonded with her siblings and Maria, with whom the child had been living for three years.  MaryJane was "delighted" to be in that living arrangement, and she looked forward to growing up with Maria and her siblings.  "[T]he strength of a child's bond to his or her present caretakers, and the length of time a child has been in the dependency system in relationship to the parental bond are also vital.  [Citation.]  . . .  [O]ur Supreme Court made it very clear . . . that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531; see also *In re Hector A.* (2005) 125 Cal.App.4th 783, 794 [sibling relationships are vitally important and should be preserved "whenever possible"].)  Mother fails to demonstrate how disrupting MaryJane's relationships with her prospective adoptive parent and her siblings would be in MaryJane's best interest.  (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 ["there was no showing whatsoever of how the best interests of these young children would be served by depriving them of a permanent, stable home in exchange for an uncertain future"]; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 251–252 [same].)  Therefore, we conclude that the juvenile court did not abuse its discretion by summarily denying mother's section 388 petition without an evidentiary hearing.  Because mother makes no separate argument with respect to the section 366.26 hearing, we also conclude

that the court did not err in terminating mother's parental rights over MaryJane.

## DISPOSITION

The orders denying mother's section 388 petition and terminating her parental rights over MaryJane are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

14