[Civ. No. 2882. Fifth Dist. May 9, 1977.]

EDWARD J. HLADEK et al., Plaintiffs and Appellants, v.
CITY OF MERCED, Defendant and Respondent.

586

COUNSEL

Anastasi & Vogel, Bernard J. Vogel, Jr., and Phillip J. Nielsen for Plaintiffs and Appellants.

William J. Adams, City Attorney, for Defendant and Respondent.

OPINION

FRANSON, J.—Appellants, doing business as Yellow Cab, Merced Taxi Service and Merced Dial-A-Bus, filed a complaint against the respondent City of Merced purporting to state causes of action for inverse condemnation and unfair competition. Specifically, the complaint alleged that appellants owned a "dial-a-bus, dial-a-ride" service which operated in respondent city from 1970 until November 29, 1974; that commencing in June 1974 the respondent commenced a "dial-a-ride" transportation service in direct competition with appellant; that respondent operated its service at a loss; and that the competition forced appellants to cease the operation of their business. Appellants alleged that as a direct result of respondent's competition they have been damaged in the sum of $500,000.

Respondent demurred to appellants' complaint on the ground, among others, that it failed to state a cause of action. After a hearing, the trial court ordered the general demurrer sustained without leave to amend, and a judgment of dismissal was entered.

Appellants filed a timely notice of appeal.

INVERSE CONDEMNATION

■ Where private property is taken for a public use without first paying compensation in a direct condemnation action, the property owner may take the initiative and institute an inverse condemnation action of his own to recover compensation due him. (*People* v. *Ricciardi* (1943) 23 Cal.2d 390, 400 [144 P.2d 799].)

It is well settled, however, that when a municipality or public agency engages in competition with a private business and the latter suffers economic harm, the infliction of that harm is not a "taking" of private property that requires compensation in the constitutional sense. (*United Railroads* v. *City and County of San Francisco* (1919) 249 U.S. 517 [63

L.Ed. 739, 39 S.Ct. 361, 363]; see also *Knoxville Water Co.* v. *Knoxville* (1906) 200 U.S. 22 [50 L.Ed. 353, 26 S.Ct. 224]; *Clark* v. *Los Angeles* (1911) 160 Cal. 30, 39-40 [116 P. 722].)

██ Moreover, historically a business or the goodwill or profits of a business have not been treated as the type of property covered by the constitutional guaranty of just compensation. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 819-820 [126 Cal.Rptr. 473, 543 P.2d 905].)[1]

We hold that appellants have failed to state a cause of action for inverse condemnation.

### UNFAIR COMPETITION

Business and Professions Code section 17043, which is a part of the Unfair Trade Practices Act of California, makes it unlawful for any "person" engaged in business in this state to sell any "article or product" at "less than the cost thereof to such vendor . . . for the purpose of injuring competitors or destroying competition." (See also §§ 17044 and 17030.) A "person" is defined as including a municipal corporation or other public entity (Bus. & Prof. Code, § 17021), and "article or product" is defined as including any service (Bus. & Prof. Code, § 17024).

The problem in determining whether appellants have alleged a cause of action for unfair competition is the exemption from the applicability of the Unfair Practices Act as expressed by the Legislature in Business and Professions Code section 17024, subdivision (2). This subdivision provides:

"Nothing in this chapter applies:

". . . . . . . . . . . . . . . . . . . .

"(2) To any service . . . sold or furnished by a publicly owned public utility and upon which the rates would have been established under the

---

[1]We note that the Legislature has declared that commencing January 1, 1976, goodwill of a business is compensable to a certain extent. (Code Civ. Proc., §§ 1263.510 1230.065; *Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d at p. 817.) However, apart from the question whether there was a "taking" of appellants' property within the constitutional sense, the loss of appellants' business occurred by November 29, 1974, when he was forced out of business. Because the right to damages and the value of the property taken in an inverse condemnation action are normally determined as of the time of the damage or taking (29 Cal.Jur.3d, Eminent Domain, § 318, p. 431), appellants cannot avail themselves of the new statutes.

jurisdiction of the Public Utilities Commission of this State if such service, ... had been sold or furnished by a public utility corporation, ...."

Because respondent's "dial-a-ride" transportation system appears to be a "publicly owned public utility" (see Pub. Util. Code, § 10001),[2] the pivotal issue is whether the Public Utilities Commission would have the jurisdiction to establish the rates for such service if it had been sold or furnished by a privately owned public utility.

While this court has received little help from the parties either in their briefs or at oral argument, it nonetheless appears that the following analysis is pertinent to the inquiry: California Constitution, article XII, section 6, provides that the Public Utilities Commission may fix rates for all public utilities "subject to its jurisdiction." Article XII, section 3, provides that persons who own, operate, control or manage a system for the transportation of people are public utilities subject to control by the Legislature.

Public Utilities Code section 3502 addresses itself to the subject of rates for "carriers" operating upon public highways of this state. Public Utilities Code section 211, subdivision (c), defines "common carrier" as including every "passenger stage corporation" operating within this state. Public Utilities Code section 226 provides that "passenger stage corporation" includes every person engaged as a common carrier for compensation in the ownership or operation of any passenger stage over any public highway in this state "between fixed termini or over a regular route except those, 98 percent or more of whose operations as measured by total route mileage operated, are exclusively within the limits of a single city. ...."

Chapter 8, division 2, of the Public Utilities Code pertains to "charter-party carriers of passengers" (§ 5351 et seq.). Section 5360 provides that subject to the exclusions of section 5353, "charter-party carrier of passengers" means every person engaged in the transportation of persons by motor vehicle for compensation over any public highway in this state. Section 5353 specifically excludes the provisions of chapter 8 to "(a) Transportation service rendered wholly within the corporate limits of a single city . . ." and "(g) Taxicab transportation service licensed and regulated by a city or county, by ordinance or resolution,

---

[2]Public Utilities Code section 10001 provides in pertinent part: " 'Public utility' . . . , means the supply of a municipal corporation alone or together with its inhabitants, or any portion thereof, with . . . transportation of persons . . . ."

rendered in vehicles designed for carrying not more than eight persons excluding the driver."

█ ▪It becomes obvious that the allegations in appellants' complaint concerning unfair competition are inadequate to state a cause of action against respondent. Appellant has failed to allege that respondent is operating a "passenger stage corporation" that does not operate between fixed termini or if it does operate between fixed termini, that 98 percent or more of its operations are exclusively within the city limits. Nor has appellant alleged that the provisions of chapter 8, division 2, of the Public Utilities Code governing "charter-party carriers of passengers" is inapplicable because respondent's transportation service is rendered wholly within the corporate limits of respondent city or that respondent's business is a taxicab transportation service licensed and regulated by respondent and rendered in vehicles designed for carrying not more than eight persons excluding the driver. Such allegations are essential in order to hold that the Public Utilities Commission would not have had jurisdiction to set rates for respondent's transportation service if the service were provided by a privately owned public utility corporation. This in turn determines whether respondent's business activity is outside the exemption contained in Business and Professions Code section 17024.

█ Appellants' complaint is also inadequate in that it does not allege an intent by respondent to injure competitors or destroy competition. Such an intent or purpose is an essential element in a cause of action for unfair competition under Business and Professions Code sections 17043 and 17044.[3] (See Bus. & Prof. Code, § 17043; *Dooley's Hardware Mart* v. *Food Giant Markets, Inc.* (1971) 21 Cal.App.3d 513, 516-517 [98 Cal.Rptr. 543].)

▪█ Because it is an abuse of discretion for a trial court to sustain a general demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 157 [101 Cal.Rptr. 880, 496 P.2d 1248]), we conclude that appellants, if they so elect, should be allowed to amend their complaint to attempt to state a cause of action against respondent for unfair competition.

---

[3]Proof of one or more acts of selling any article, product or service *below cost* together with proof of an injurious effect of such acts on another is *presumptive evidence* of the purpose of injuring or destroying competition. (Bus. & Prof. Code, § 17071.) This evidentiary presumption, however, will not save the complaint from a general demurrer.

The judgment of dismissal of the third cause of action is reversed; the matter is remanded with directions to the trial court to give appellants leave to amend their complaint.

Brown (G. A.), P. J., and Gargano, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 29, 1977.