[No. G015413. Fourth Dist., Div. Three. May 8, 1996.]

JONG SEAU CHHOUR, Plaintiff and Appellant, v.
COMMUNITY REDEVELOPMENT AGENCY OF BUENA PARK,
Defendant and Respondent.

■■■■■■■■■■

COUNSEL

Anthony P. Parrille and Tina R. Sibbitt for Plaintiff and Appellant.

Markman, Arczynski, Hanson & King, Markman, Arczynski, Hanson, Curley & Slough and Heriberto F. Diaz for Defendant and Respondent.

OPINION

CROSBY, J.—Small-business owner Jong Seau Chhour appeals the dismissal of his inverse condemnation action after the superior court sustained a demurrer without leave to amend. He claims he was entitled to seek compensation for loss of business goodwill and for damage to other business property. We reverse in part and otherwise affirm.

I

The first amended complaint alleged plaintiff was the owner of CBS Seafood Restaurant. He leased space in the Valley View Shopping Center, located in Buena Park, from Pine Realty, Inc. He had improved the premises, installed fixtures and equipment, and purchased inventory and supplies. His business was established and had repeat patronage.

The shopping center lease provided in article 15, "Eminent Domain," that it would terminate if the property was taken by eminent domain, which included a voluntary sale by the landlord under the threat of condemnation. The lease stated, "all damages awarded or other sums or awards paid on account of any condemnation or taking under the power of eminent domain of the Demised Premises . . . shall belong to and be the sole property of Landlord, whether such damages or other sums are awarded as compensation for loss or diminution in value of the leasehold, or for the fee of the Demised Premises, or otherwise; and in no event shall Tenant have any claim whatsoever against Landlord for loss or diminution in value of the leasehold or for the value of any unexpired term of [the] lease, Tenant hereby expressly waiving any such right or claim; provided, however, Tenant shall be entitled to any award or portion thereof made for or on account of any loss or cost to which Tenant might be put in removing Tenant's merchandise, fixtures, equipment or furnishings and/or for any loss or damage to the same."

Article 7 of the lease required the written consent of the landlord to make structural changes, alterations or additions, and provided that "except for

movable trade fixtures, equipment and furnishings," the improvements became the sole property of the landlord.

Pine advised plaintiff in May 1992 that it was terminating the lease pursuant to article 15. Not long after, defendant Community Redevelopment Agency of Buena Park notified plaintiff it had acquired the shopping center and that plaintiff could either vacate or execute a new month to month lease agreement. Plaintiff was told he would receive relocation benefits under Government Code section 7260 et seq. when it came time to move. Plaintiff signed the lease "in order to continue doing business as long as possible and to mitigate [his] damages."

Defendant notified plaintiff in October 1992 that the lease would terminate January 8, 1993. Plaintiff has left the building.

The agency has refused to initiate eminent domain proceedings against plaintiff. It has offered to pay for some items, but plaintiff alleges he sustained injury to his business from the date defendant acquired the shopping center and has not received any compensation for most of the losses caused by the forced move. He seeks compensation for "improvements, fixtures and equipment, inventory, merchandise, and furnishings," in addition to compensation for loss of business goodwill.

The superior court sustained the redevelopment agency's demurrer to the first amended complaint, and Chhour appeals.[1]

## II

Plaintiff first complains that he was entitled to seek compensation for the loss of business goodwill. Defendant concedes its acquisition of the property was the substantial equivalent of condemnation of plaintiff's business (see, e.g., *Lanning* v. *City of Monterey* (1986) 181 Cal.App.3d 352 [226 Cal.Rptr. 258]) and acknowledges that a direct condemnee is entitled to compensation for loss of goodwill under specified circumstances. (See Code

---

[1]The written dismissal order does not specify the court's reasons, nor have the parties supplied a reporter's transcript of any hearing held on the demurrer. We assume from the briefing the court did not rule against plaintiff on the grounds the complaint was uncertain (it probably would have sustained with leave to amend); defendant has not reiterated its claim below that plaintiff failed to separately "allege specific facts concerning a taking or damaging of property," and that his "allegations [were] nonspecific, vague, ambiguous and conclusory . . . ." (He joined several other plaintiffs below.)

Civ. Proc., § 1263.510.)[2] Defendant argues, however, that section 1263.510 does not apply in an inverse condemnation action. It asserts only constitutionally required compensation is recoverable; since goodwill is not compensable as a matter of constitutional law, plaintiff cannot recover for loss of goodwill. Plaintiff counters that, where appropriate, eminent domain law should be followed in inverse condemnation actions. We agree with plaintiff.

Previously, courts had established "that 'that form of property known as business or the goodwill of a business' [*Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398 (153 P. 705)] is not the form of property to which constitutional provisions requiring just compensation refer." (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 819 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].) The rule denying compensation for goodwill applied in all cases where the condemner took the fee upon which a business was conducted, but did not preclude the condemnee from transferring its going-concern or goodwill value to another location. The theory was that ". . . it is 'fair on the whole' to treat all such condemnees alike, refusing to create distinctions on the basis of 'the remote possibility that the owner will be unable to find a wholly suitable location for the transfer of going-concern value.' [Citation.]" (*Id.* at p. 825.)

This judicial stinginess was displaced by the passage of Code of Civil Procedure section 1263.510. A remedial statute, the Legislature enacted section 1263.510 in 1975 as part of a comprehensive revision of eminent domain law. The section was added "in response to widespread criticism of the injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation." (*People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340].)

Code of Civil Procedure section 1263.510, subdivision (b) defines "goodwill" as "the benefits that accrue to a business as a result of its location,

[2]Section 1263.510 provides: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner. [¶] (b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." The statute provides "monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*People* ex rel. *Dept. of Transportation* v. *Muller, supra*, 36 Cal.3d at p. 270; see also *Community Development Com.* v. *Asaro* (1989) 212 Cal.App.3d 1297 [261 Cal.Rptr. 231].)

Plaintiff acknowledges that Code of Civil Procedure section 1263.510 does not directly control here. Legislative comments introducing the Eminent Domain Law state that "The provisions of the Eminent Domain Law are intended to supply rules only for eminent domain proceedings. The law of inverse condemnation is left for determination by judicial development." (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1982 ed.) § 1230.020, p. 395.) Similarly, the chapter dealing with compensation is prefaced with the following: "Likewise, this chapter in no way limits compensation that may be required by [the just compensation clause of the California Constitution, article I, section 19]. On the other hand, the 'just compensation' clause does not limit the compensation required by this chapter. This chapter is intended to provide rules of compensation for eminent domain proceedings; the law of inverse condemnation is left for determination by judicial development." (Cal. Law Rev. Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) § 1263.010, p. 6.) According to the legislative commission minutes, the new law "is drafted with the intent to provide rules for eminent domain and that the title is *neutral* with respect to the applicability of any of its provisions to inverse condemnation actions." (Italics added.)

"Neutral" does not mean antagonistic. Defendant has provided no rationale for a rule that would treat an indirect condemnee differently from a direct one where compensation for goodwill is concerned. In both instances the government has forced a business to relocate and has caused it to suffer some loss that will not be compensated under the relocation provisions of the Government Code. The only distinction is that the inverse condemnee has been forced to initiate a legal proceeding to recover the compensation. There is nothing in the eminent domain law suggesting the courts should not follow the Legislature's lead when it comes to awarding just compensation, even if the compensation is not constitutionally mandated.

As plaintiff notes, the judiciary and the Legislature frequently cross-pollinate in this area for a good reason: "[I]t is well established that condemnation and inverse condemnation are merely different forms of the

same limitation on governmental power. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 67 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208]; *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1 [39 Cal.Rptr. 903, 394 P.2d 719]; *McMahan's of Santa Monica* v. *City of Santa Monica* [1983] 146 Cal.App.3d [683,] 700 [194 Cal.Rptr. 582].)" (*Aetna Life & Casualty Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 865, 877 [216 Cal.Rptr. 831].) Principles applicable to eminent domain proceedings apply, where appropriate, to suits in inverse condemnation. (*Patrick Media Group, Inc.* v. *California Coastal Com.* (1992) 9 Cal.App.4th 592, 607 [11 Cal.Rptr.2d 824]; 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1060, p. 631.)

For example, in *Highland Realty Co.* v. *City of San Rafael* (1956) 46 Cal.2d 669 [298 P.2d 15], the Supreme Court determined there was a right to jury trial in an action for inverse condemnation, relying on the state constitutional rule in eminent domain actions: "Although no case precisely in point has been cited or discovered, the general provision of [former] section 14 [now section 19] of article I of the Constitution that 'which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law,' would appear to apply to compensation in an inverse condemnation proceeding with the same force *as in any other eminent domain matter.* [Citations.] In *Tyler* v. *Tehama County* (1895), 109 Cal. 618, 624 [42 P. 240], it was declared that an inverse condemnation action is clearly within the constitutional provision prohibiting the taking or damaging of private property for public use without the payment of just compensation therefor, and various other rules usually followed in eminent domain actions have been applied by the cases to inverse condemnation proceedings. [Citations.]" (*Id.* at p. 683, italics added.)

Another example is *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 948 [218 Cal.Rptr. 839], where the court concluded the measure of damages in inverse condemnation, as in eminent domain actions, is "market value" and relied in part on the definition of that term in Code of Civil Procedure section 1263.330.

*Frustuck* v. *City of Fairfax* (1964) 230 Cal.App.2d 412, 415 [41 Cal.Rptr. 56] held litigation expenses on dismissal or defeat of a right to take in an eminent domain proceeding under former Code of Civil Procedure, section 1255a (see now § 1268.610) were not available in inverse condemnation actions, but based that determination on the express language of the section: "[T]he office of the judge is simply to ascertain and declare what is in terms or in substance contained therein. (Code Civ. Proc., § 1858.) A court may

not speculate that the Legislature meant something other than what it said. [Citation.] [¶] To convert the word 'defendant' to 'condemnee,' who in an action in inverse condemnation would be the *plaintiff*, would indeed be an extraordinary translation, and could be done, if at all, only upon the clearest showing that this is the true will of the Legislature." (230 Cal.App.2d at pp. 415-416.) The court concluded such a showing had not been made.

Code of Civil Procedure section 1263.510 provides that the *"owner of a business* conducted on the property taken . . . *shall be compensated* for [the] loss of goodwill . . . ." (Italics added.) Unlike *Frustuck*, there is no impediment to its importation into the law of inverse condemnation.

At least one treatise tends to support plaintiff: "Loss of business goodwill may now be recoverable in an inverse condemnation action. ([Code Civ. Proc.] § 1263.510; *Hladek* v. *City of Merced* (1977) 69 [Cal.App.3d] 585, 589, [fn. 1] [138 Cal.Rptr. 194].)" (2 Matteoni & Veit, Condemnation Practice in Cal. (Cont.Ed.Bar 2d ed. 1995) § 13.8, p. 609.) In *Hladek* plaintiff sued for inverse condemnation and unfair competition, alleging his "dial-a-bus, dial-a-ride" service was forced out of business by a similar, city-run venture. The court ultimately determined competitive activity by a governmental activity cannot amount to a taking. But it also noted (citing the *Abrams* rule) goodwill was not compensable, observing that new Code of Civil Procedure section 1263.510 was not in effect when plaintiff gave up his business: "We note that the Legislature has declared that commencing January 1, 1976, goodwill of a business is compensable to a certain extent. (Code Civ. Proc., §§ 1263.510, 1230.065[.]) However, apart from the question whether there was a 'taking' of appellants' property within the constitutional sense, the loss of appellants' business occurred by November 29, 1974, when he was forced out of business. Because the right to damages and the value of the property taken in an inverse condemnation action are normally determined as of the time of the damage or taking (29 Cal.Jur.3d, Eminent Domain, § 318, p. 431), appellants cannot avail themselves of the new statutes." (*Hladek*, *supra*, 69 Cal.App.3d at p. 589, fn. 1.) *Hladek* thus suggests that section 1263.510 would apply in an inverse condemnation action.

Defendant misstates the legislative history in support of its position. For example, it cites a legislative committee memorandum (73-66), and argues, "Concerns about the applicability of Section 1263.510 to inverse condemnation cases were expressed to the Law Revision Commission . . . ." The cited memo does reflect a potential problem area but not the one defendant suggests: "The State Bar Committee is concerned that the rules for compensation in eminent domain proceedings will be applied to inverse condemnation *to deny compensation* in some instances where it is presently allowed.

The committee recommends that an express disclaimer be incorporated in the beginning of the Eminent Domain Law to make clear that its provisions are not applicable in inverse condemnation proceedings." (Italics added.)

As noted by the legislative committee that drafted the new eminent domain provisions, "relocation assistance provisions relating to business loss are quite limited, and goodwill is compensated only to the extent not covered by the relocation assistance provisions. While the goodwill is not an interest 'acquired for public use,' it is a loss sustained because of a taking for public use, [and] hence is properly compensable."

Although we agree with defendant that the Legislature "did not intend to make [section] 1263.510 applicable to inverse condemnation actions," neither did it intend to deny an inverse condemnee compensation that any other business owner, whose business is taken for a public purpose, can recover. In light of the Legislature's express provision for direct condemnees, we conclude, as a matter of judicial development of the law, that goodwill is compensable in an inverse condemnation action to the same extent and with the same limitations on recovery found in Code of Civil Procedure section 1263.510.[3] The complaint properly sought compensation for goodwill; thus, the superior court erred.

### III

Plaintiff's complaint seeks an award for fixtures, improvements, equipment, and inventory. Defendant argues plaintiff is not entitled to compensation because the property was either "personal" or "movable," or if not, was allocated to the landlord (Pine) under the terms of the lease. Plaintiff concedes under the lease it had no interest in the leasehold, i.e., "bonus value" (bonus value is the present value of the difference between the market rent and contract rent through the remaining lease term; see *New Haven Unified School Dist.* v. *Taco Bell Corp.* (1994) 24 Cal.App.4th 1473, 1478-1479 [30 Cal.Rptr.2d 469]).

Code of Civil Procedure section 1263.205 (which defendant concedes applies in inverse condemnation actions) provides for compensation for improvements pertaining to realty. This includes, among other things, machinery, equipment and furniture installed for use on property taken by eminent domain that cannot be removed without a substantial economic loss, or without substantial damage to the property on which it is installed.

[3]It is therefore unnecessary to address plaintiff's equal protection argument. (See *Beaty* v. *Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 916 [231 Cal.Rptr. 128].)

Personal property (i.e., removable property) is not compensable however. Presumably, it will, or should be, removed by its owner when the realty is acquired (see *Community Redevelopment Agency* v. *Abrams, supra*, 15 Cal.3d at p. 835) and is thus not "taken" by the public entity when it condemns real property or a business. Under the relocation act (Gov. Code, § 7260 et seq.), the public entity compensates the owner for the cost of moving the personal property to a new site. (Gov. Code, § 7262, subd. (a)(1), (2); see *County of San Diego* v. *Cabrillo Lanes, Inc.* (1992) 10 Cal.App.4th 576, 584 [12 Cal.Rptr.2d 613]; *Baldwin Park Redevelopment Agency* v. *Irving* (1984) 156 Cal.App.3d 428 [202 Cal.Rptr. 792].) Business inventory may be compensable under limited circumstances, i.e., where the loss results from the condemnatory act itself (e.g., the inventory cannot be relocated) rather than the personal circumstances of the condemnee (e.g., the owner has decided that he will not relocate). (See *id.* at p. 437.)

A tenant and landlord may apportion a condemnation award any way they see fit, however, and a tenant may assign his rights in a condemnation award. (See generally, Annot., Validity, Construction, and Effect of Statute or Lease Provision Expressly Governing Rights and Compensation of Lessee Upon Condemnation of Leased Property (1994) 22 A.L.R.5th 327.)[4] For example, in *City of Beverly Hills* v. *Albright* (1960) 184 Cal.App.2d 562 [7 Cal.Rptr. 706], the lease provided the lessee " 'hereby assigns to Lessor his rights to any and all damages for property taken in any such [eminent domain] proceeding and all such damages shall be payable to lessor.' " (*Id.* at p. 564.) The court affirmed a judgment denying tenants' claim of damages for the taking of trade fixtures. (*Id.* at pp. 567-569; see also *People ex rel. Dept. Pub. Wks.* v. *Amsden Corp.* (1973) 33 Cal.App.3d 83 [109 Cal.Rptr. 1] [lease assigned bonus value].) In *Dix Box Co.* v. *Stone* (1966) 244 Cal.App.2d 69 [52 Cal.Rptr. 847], the lease provided that if "any portion" of the rented premises was taken, the rental would be reduced, but that " ' "Lessee shall be entitled to no other or further consideration by reason of such taking, and any severance damages occasioned by the taking of any portion of the leased premises and any damages to any structures erected thereon shall be paid to and received by Lessor, and Lessee shall have no right therein or thereto or to any part thereof, and Lessee hereby relinquishes to Lessor any rights to any such damages; provided, however, that if the remaining portion of said building, after deducting the portion taken by said eminent domain proceedings is insufficient for the conduct of

---

[4]The Supreme Court will apparently decide whether a tenant implicitly waives a claim to any compensation when it agrees the lease will terminate upon condemnation. (*City of Vista* v. *Fielder* (Cal.App.) review granted July 27, 1995 (S046856).)

Lessee's business, then and in that event Lessee may at its option cancel this lease." ' " (*Id.* at p. 73, fn. 1.) The court held the tenant was entitled to nothing after the entire premises were condemned. However, in each of these cases, the tenant had an opportunity to explore the meaning of the lease provision; they were not resolved on demurrers. (See, e.g., *County of Los Angeles* v. *Stone* (1961) 198 Cal.App.2d 640 [18 Cal.Rptr. 72].)

As noted above, article 15 of the lease generally assigned the condemnation award to the landlord, although it is debatable whether the primary concern was the value of the leasehold (which plaintiff makes no claim to): "Except as otherwise herein provided, all damages awarded or other sums or awards paid on account of any condemnation or taking . . . of the Demised Premises . . . shall belong to and be the sole property of Landlord, whether such damages or other sums are awarded as compensation for loss or diminution in value of the leasehold, or for the fee of the Demised Premises, *or otherwise*; and in no event shall Tenant have any claim whatsoever against Landlord for loss or diminution in value of the leasehold or for the value of any unexpired term of [the] lease, Tenant hereby expressly waiving any such right or claim . . . ." (Italics added.)

"[O]r otherwise" suggests tenant is entitled to nothing; but the last clause belies an absolutist interpretation: "Tenant shall be entitled to any award or portion thereof made for or on account of any loss or cost to which Tenant might be put in removing Tenant's merchandise, fixtures, equipment or furnishings and/or for any loss or damage to the same." Thus, plaintiff is clearly entitled to a portion of the award attributable to any loss or damage to *his* merchandise, fixtures, equipment or furnishings.

Defendant urges that under article 7 of the lease, nothing compensable was left to plaintiff. As noted above, subsection A of article 7 of the lease provided that "*Any additions, alterations or changes in or to the Demised Premises* shall be at Tenant's sole cost and expense and, *except for movable trade fixtures, equipment and furnishings, shall become at once part of the realty and be the sole property of Landlord.*" (Italics added.)

At the risk of balancing too many angels on the head of this pin, we think defendant's position has some obvious shortcomings. This case arises from a sustained demurrer; we have absolutely no idea what specific items of property plaintiff claims he lost. Although it seems unlikely that plaintiff may have lost compensable inventory because he operated a restaurant, defendant does not, and cannot by our reading of the lease, claim an assignment of compensation for this item. Moreover, with only the complaint and lease to look to, we cannot say that plaintiff may not have lost

compensable fixtures or equipment that he owned under the lease. For example, defendant agrees plaintiff owned "movable fixtures, equipment and furnishings." If removal of these items would cause a substantial economic loss, they were compensable under the eminent domain law and that compensation was excepted from the general assignment to the landlord under subsection E of article 15 of the lease.

In short, we cannot accept at the pleading stage defendant's contention that the lease provision and the eminent domain law meshed precisely, so that all property excepted to plaintiff under the lease was noncompensable. We agree with plaintiff that characterization of his inventory and other items for purposes of compensation is a mixed question of law and fact that must be decided item by item. The court erred.[5]

## IV

■ Plaintiff also argues he was entitled to seek precondemnation damages. Both parties cite *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]. (But see *Melamed* v. *City of Long Beach* (1993) 15 Cal.App.4th 70, 82 [18 Cal.Rptr.2d 729].) There, plaintiffs were lessors who claimed the value of their properties declined as a result of the public entity's announcement that it intended to institute eminent domain proceedings. Plaintiffs alleged defendant unreasonably (for the purpose of depressing the fair market value and preventing plaintiffs from using their land) announced on two separate occasions its intent to condemn, only to abandon eminent domain proceedings with the apparently spiteful announcement it would reinstate them if certain related litigation went in its favor. The lessors claimed lost rental income. The court held that when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, the owner must be compensated.

Plaintiff has not alleged or identified any specific "additional damages" caused by defendant's actions. Any "damages for the deleterious impact[] on [plaintiff's] business" will presumably be determined in conjunction with his claim for lost goodwill. We conclude the demurrer to the second cause of action was properly sustained.

The judgment is reversed in part with directions to overrule the demurrer to the first cause of action in the first amended complaint and is otherwise affirmed.

---

[5]We note that by leaving plaintiff out of the condemnation process, the redevelopment agency assumed the risk that it might be required to pay more than the total value of the property. (*New Haven Unified School Dist.* v. *Taco Bell Corp.*, *supra*, 24 Cal.App.4th at pp. 1489-1490 (conc. & dis. opn. of Stein, J.).)

No costs on appeal are awarded in this interim proceeding, but they may be assessed in favor of the party ultimately prevailing in the discretion of the superior court.

Sills, P. J., and Sonenshine, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 14, 1996. Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.