Filed 3/26/19 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> YUM YUM DONUT SHOPS, INC., <br><br> Defendant and Appellant. | B276280 <br><br> (Los Angeles County Super. Ct. No. BC514144) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed February 26, 2019 is modified as follows:

1. The following paragraph is to be inserted before the first full paragraph on page 18:

MTA did not rehabilitate Amster after he admitted Yum Yum would not preserve Store 58's goodwill if it relocated to the proposed sites. In fact, MTA reinforced Amster's opinion on redirect.

Specifically, MTA's attorney asked Amster if he accounted for retained and new patronage in his projection of the proposed relocation sites' goodwill. Amster said he did, thus confirming his opinions that the respective proposed relocation sites' goodwill was less than Store 58's goodwill and Yum Yum would lose goodwill even if it relocated Store 58 to one of those sites. (See § 1263.510, subd. (b) [goodwill consists of benefits resulting in probable retention of old or acquisition of new patronage].) Additionally, MTA's other expert witness, its relocation agent, Peter Rhoad, testified, "[t]here was an estimated range of 75 to 90 percent retention" of Store 58's patronage at the proposed relocation sites. A fortiori, Yum Yum would have lost 10 to 25 percent of Store 58's patronage if it relocated Store 58 to one of the proposed sites. Thus, Rhoad's testimony further reinforced Amster's opinion that Yum Yum would not preserve a significant portion of Store 58's goodwill if it relocated to the proposed locations.

There is no change in the judgment.
Appellant's petition for rehearing is denied.
CERTIFIED FOR PUBLICATION.

_____

CHANEY, Acting P. J.       BENDIX, J.        WEINGART, J.*

_____

    * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, | B276280 |
| | (Los Angeles County Super. Ct. No. BC514144) |
| Plaintiff and Respondent, | |
| v. | |
| YUM YUM DONUT SHOPS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge. Reversed.

Murphy & Evertz, Douglas J. Evertz and Emily L. Madueno for Defendant and Appellant.

Nossaman, David Graeler and Jennifer L. Meeker for Plaintiff and Respondent.

———————————————

Plaintiff Los Angeles County Metropolitan Transportation Authority (MTA) sued defendant Yum Yum Donut Shops, Inc. (Yum Yum) in eminent domain to take[1] one of Yum Yum's donut shops that was in the path of a proposed rail line. Yum Yum sought compensation for the loss of goodwill resulting from that taking under Code of Civil Procedure section 1263.510 (section 1263.510).[2] Under that statute, a condemnee must establish in a court trial entitlement to goodwill, including whether the loss of goodwill cannot be prevented by relocating or making other reasonable mitigation efforts. It is that condition to entitlement that is the subject of this appeal. If the condemnee meets the entitlement threshold in section 1263.510, section 1263.510 further provides for a jury trial to determine the value of the loss of goodwill.

The trial court concluded Yum Yum was not entitled to compensation for goodwill because Yum Yum unreasonably

---

[1] A taking occurs "[w]hen the state exercises its power of eminent domain over a parcel of land." (*People ex rel. Dept. of Transportation v. Dry Canyon Enterprises, LLC* (2012) 211 Cal.App.4th 486, 489 (*Dry Canyon*).)

[2] Section 1263.510, subdivision (a) provides: "The owner of a business conducted on the property taken . . . shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner."

2

refused to relocate the shop to one of three sites MTA proposed at the entitlement trial. The undisputed expert testimony elicited at trial, however, established Yum Yum would lose some of the donut shop's goodwill even if Yum Yum relocated the shop to one of those sites.

Accordingly, the question here is whether a condemnee is entitled to compensation for lost goodwill if any portion of that loss is unavoidable. We answer that question in the affirmative based on the statute's legislative history, accompanying Law Review Commission Comments, case law, and the general principles governing mitigation of damages. Under these authorities, a condemnee need only prove *some* or *any* unavoidable loss of goodwill to satisfy the condemnee's burden to demonstrate entitlement to compensation for goodwill under section 1263.510.

We conclude the trial court erred in finding that Yum Yum's failure to mitigate some of its loss of goodwill precluded compensation for any loss of goodwill, reverse, and remand for a jury trial on the value of Yum Yum's lost goodwill.

## FACTUAL AND PROCEDURAL BACKGROUND

Yum Yum operates a chain of donut shops, including one located at 3642 Crenshaw Boulevard in Los Angeles, which facility Yum Yum leased and identified as Store 58. Yum Yum operated Store 58 for over 30 years until December 4, 2013, and had a "longterm lease." Yum Yum believed Store 58 benefitted from its location[3] according to Yum Yum's criteria for selecting shop locations.

---

[3] Specifically, Store 58 occupied a 1,232-square-foot freestanding building that fronted the side of the street that

3

Those criteria were: "(a) Located on the morning traffic side of the street. [¶] (b) Located on a heavily trafficked street leading to a freeway. [¶] (c) Easy access for ingress, parking, and egress. [¶] (d) Visible shop with visible convenient front end parking located near the shop's entrance. [¶] (e) Free-standing building or, at minimum, a visible endcap space fronting directly on the street so as not to be blocked by other center tenants. [¶] (f) Located at or near a signalized intersection. [¶] (g) Suitable, visible pole sign available. [¶] (h) Enjoys a one-mile trade radius. [¶] (i) Building signs available with visibility from multiple directions. [¶] (j) Located in a densely populated area. [¶] (k) Located in a neighborhood with favorable demographics: a lower to middle income community. [¶] (l) Occupying a 1,200-square-foot to 1,700-square-foot space."

MTA sought to condemn Store 58 because it was in or appurtenant to the proposed path of a dual-track light rail line—the Crenshaw/LAX Transit Corridor Project—that MTA was planning to construct. MTA commenced eminent domain proceedings against Yum Yum in the trial court, and obtained an order for prejudgment possession of Store 58. Yum Yum

---

carried heavy morning traffic toward Interstate 10, and "[d]onut shops thrive on morning business." The shop's two driveways made ingress and egress convenient because they allowed drivers to turn right into the shop's parking lot and then turn right to return to the street. Just south of the shop was a signalized intersection that slowed traffic, thus making the shop more visible and convenient to enter and exit. The shop's "pole sign" occupied the highest, largest place on the pole. The shop had, in total, three building signs visible from three directions: north, south, and west. The shop had a "one-mile trade radius" within a densely populated neighborhood with demographics (lower-to-middle income) that were favorable to Yum Yum's business.

4

then evaluated three potential sites to relocate Store 58, which sites MTA had proposed, and concluded those locations each failed to satisfy some of the aforementioned criteria.[4]

Subsequently, the parties appeared at a bench trial on whether Yum Yum was entitled to compensation for the loss of goodwill resulting from MTA's taking of Store 58.

MTA's expert on goodwill, Aaron Amster, a business appraiser, testified that the value of Store 58's goodwill was $620,000. Amster further testified that if Yum Yum relocated to one of MTA's three proposed sites, Yum Yum would recapture $202,000, $138,000, or $340,000 in goodwill, respectively. Amster opined, "some goodwill could have been preserved at all three of these potential relocation sites." On cross-examination, Amster stated his opinion's corollary: "There would have been a loss of goodwill" if Yum Yum "had relocated [the shop] to one of these three locations." Further, Amster answered in the affirmative when Yum Yum's counsel asked him, "there still would have been a loss of goodwill had [the shop] relocated according to your opinion?" In closing, Yum Yum argued it was entitled to compensation for the value of lost goodwill under section 1263.510 because Amster conceded Yum Yum would lose *some* goodwill even if it relocated the shop to one of the three potential relocation sites. Yum Yum further argued it was entitled to a jury trial under section 1263.510 to determine that value.

---

[4] Yum Yum also rejected at least seven other potential relocation sites MTA proposed. We do not address those sites because MTA only contends Yum Yum acted unreasonably in rejecting the three sites noted above.

5

MTA argued that Yum Yum applied overly strict location selection criteria and unreasonably rejected the three potential relocation sites, thus precluding Yum Yum from seeking compensation for *any* lost goodwill under section 1263.510, subdivision (a)(2).

In its statement of decision, the trial court interpreted section 1263.510 as follows:  "Where the condemnee cannot establish the facts showing it took reasonable steps to preserve its goodwill, it will not be entitled to *any* compensation for alleged loss of goodwill" and, if a business can retain some goodwill by relocating, it must do so.  (Italics added.)  The trial court cited section 1263.510, subdivision (b), 11 Miller & Starr, California Real Estate (3d ed. 2011) section 30A:45, pages 108-112 and 1 Matteoni & Veit, Condemnation Practice in California (Cont.Ed.Bar 3d ed. 2011) section 4:71, page 117 as authority for these propositions.

The trial court found Yum Yum acted unreasonably in applying overly strict location selection criteria and rejecting the three potential relocation sites based on Amster's testimony.[5]

Thus, the trial court found Yum Yum was not entitled to a jury trial on the value of the compensation for *any* lost goodwill resulting from the taking of the shop because Yum Yum unreasonably failed to preserve *some* of the shop's goodwill and could have done so.[6]  The trial court never held a jury trial on the

---

[5] The trial court also found Yum Yum was uncooperative with MTA's relocation agent, placed an inexperienced individual in charge of its relocation efforts, and failed to investigate relocation assistance benefits.

[6] MTA did not argue, and the trial court did not find Yum Yum failed to prove the taking caused a loss of goodwill or

6

value of Yum Yum's lost goodwill, and entered a final judgment in MTA's favor.  Yum Yum timely appealed.

## STANDARD OF REVIEW

"A trial court's finding that a business owner has not established entitlement to compensation for a loss of goodwill is generally reviewed under the substantial evidence standard. (See *Dry Canyon*, *supra*, 211 Cal.App.4th at p. 493.)  To the extent the [trial] court's conclusion is premised on the interpretation of the requirements of a statute, . . . we review de novo.  (*Id.* at p. 491.)" (*People ex rel. Dept. of Transportation v. Presidio Performing Arts Foundation* (2016) 5 Cal.App.5th 190, 200 (*Presidio*).)  Substantial evidence is evidence that is " 'of "ponderable legal significance."  It must be "reasonable in nature, credible, and of solid value." ' " (*County of Riverside v. City of Murrieta* (1998) 65 Cal.App.4th 616, 627.)

## DISCUSSION

**A.**     **The Legislative History Of Section 1263.510 Indicates The Statute Is To Be Construed Liberally In Favor Of Providing A Remedy To Condemnees For Loss Of Goodwill Resulting From A Taking**

Section 1263.510[7] provides for compensation for the loss of goodwill resulting from a taking.[8]  Section 1263.510,

---

that compensation for the lost goodwill would be duplicative of any other compensation for the taking, such as lost property value and relocation expenses.  (See § 1263.510, subd. (a)(1), (3), (4).)  Having not raised these other grounds below, MTA has forfeited them.  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.)

    [7] *Ante*, footnote 2.

subdivision (b) defines goodwill as "the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

"[T]he Legislature enacted section 1263.510 in 1975 as part of a comprehensive revision of eminent domain law." (*Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 278 (*Chhour*).) Previously, only constitutional provisions[9] governed " 'the form of property . . . requiring just compensation,' " and courts did not view those provisions as providing for goodwill as a compensable form of property. (*Chhour, supra,* 46 Cal.App.4th at p. 278, citing *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813, 819 (*Abrams*), *Oakland v. Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398.)

"This judicial stinginess was displaced by the passage of Code of Civil Procedure section 1263.510." (*Chhour, supra,* 46 Cal.App.4th at p. 278.) "The section was enacted in response to widespread criticism of the injustice wrought by the . . . historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation." (*People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d

---

[8] *Ante*, footnote 1.

[9] MTA brought this action under Article I, section 19 of the California Constitution, which section provides in relevant part: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." (See *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813, 816, fn. 2.)

263, 270 (*Muller*), citing *Abrams*, *supra*, 15 Cal.3d at p. 831.) Thus, section 1263.510 is a remedial statute that is " '*to be liberally construed*, with a view to effect its objects and to promote justice.' " (*Muller*, *supra*, 36 Cal.3d at p. 270.) We are mindful of this legislative history as we interpret section 1263.510.

**B.    Section 1263.510 Operates By A Two-Step Process: (1) The Court Determines The Condemnee's Entitlement To Compensation For Lost Goodwill, And (2) A Jury Determines That Goodwill's Value**

Determining liability for loss of goodwill under section 1263.510 involves a two-step process. "First, the court determines *entitlement*: that is, whether the party seeking compensation has presented sufficient evidence of the conditions for compensation set forth in subdivision (a)—causation, unavoidability, and no double recovery—such that the party is entitled to *some* compensation. If the party meets this burden, the matter proceeds to a second step, in which a jury (unless waived) determines the *amount* of the loss." (*Presidio*, *supra*, 5 Cal.App.5th at p. 201.) Thus, if that party meets certain " 'qualifying conditions for such compensation,' " it has a right to a jury trial on the amount of compensation due. (*Dry Canyon*, *supra*, 211 Cal.App.4th at p. 491.)

Here, as set forth above, in the first phase, the trial court hinged its decision that Yum Yum was not entitled to compensation on the qualifying condition that *Presidio* described as "unavoidability." (*Presidio*, *supra*, 5 Cal.App.5th at p. 201.) Section 1263.510, subdivision (a)(2) sets forth that condition as follows: "The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a

9

reasonably prudent person would take and adopt in preserving the goodwill." Thus, we interpret section 1263.510, subdivision (a)(2) according to the canons of statutory construction in the following subsection. (See *Dry Canyon*, *supra*, 211 Cal.App.4th at p. 492.)

## C. Entitlement Under Section 1263.510, Subdivision (a)(2) Exists Where The Condemnee Would Lose Goodwill That Could Not Be Avoided By Relocating Or Taking Other Reasonable Steps

As MTA argues, the language of section 1263.510 is unambiguous. The statute's unambiguous plain language provides that a condemnee must show it cannot prevent a loss of goodwill by relocating or otherwise taking reasonable steps to prevent that loss to be entitled to a jury trial on the amount of that unavoidable loss. A fortiori, if the condemnee would lose goodwill—even if it relocated its business or otherwise reasonably mitigated the loss—the condemnee satisfies its threshold burden. Nothing in section 1263.510's language provides that the condemnee is entitled to no compensation at all for lost goodwill if the condemnee fails to mitigate a portion of that loss. We believe the statute's legislative history, the Law Review Commission Comments, and case law applying the statute support this interpretation. The legislative history recounted above establishes that the statute is remedial, and thus to be construed liberally in favor of compensating business owners for lost goodwill. (*Muller*, *supra*, 36 Cal.3d at p. 270.)

" 'We give the California Law Revision Commission comments "substantial weight" in construing' " statutes. (*City of Corona v. Liston Brick Co.* (2012) 208 Cal.App.4th 536, 545 [referring to Evidence Code].) A Law Revision Commission

10

Comment to section 1263.510 provides, "Goodwill loss is recoverable under Section 1263.510 only *to the extent* it cannot reasonably be prevented by relocation or other efforts by the owner to mitigate." (Italics added.) Nowhere does the Commission state that the unreasonable failure to mitigate some loss of goodwill precludes recovery of compensation for any loss of goodwill that could not be avoided despite the exercise of reasonable mitigation efforts. To conclude otherwise would be to ignore the Commission's juxtaposition of "to the extent" close to "cannot reasonably be prevented."

Our interpretation of section 1263.510 is not without precedent. For example, in *Presidio*, the First District reversed the trial court's finding that the condemnee had failed to establish entitlement to goodwill compensation because the trial court disagreed with the condemnee's method of calculating lost goodwill. (*Presidio*, *supra*, 5 Cal.App.5th at p. 204.) There, the trial court had found, "[a]though it was 'clear that Caltrans' taking caused the Foundation to suffer a loss of goodwill,'" the Foundation had "failed to prove 'the *quantitative . . .* loss of goodwill.'" (*Id*. at p. 199.)

In reversing the trial court, the *Presidio* court first described the condemnee's initial burden during the entitlement phase: "In the entitlement stage of the proceeding, the party seeking compensation must show that it has suffered a 'loss of goodwill.' [Citations.] The precise *amount* of the lost goodwill, however, is an issue for the jury in the second phase of the proceeding. [Citation.] Accordingly, in the entitlement phase, the party seeking compensation need only show that there was *some* loss of the benefit that the business was enjoying before the taking due to its location, reputation, and the like, without

11

necessarily having to quantify its precise value." (*Presidio*, *supra*, 5 Cal.App.5th at p. 204.)

To underscore that the purpose of the entitlement phase is to discern whether the condemnee suffered "*some*" loss of goodwill, the court then analyzed whether the condemnee's method of valuing loss of goodwill was "doomed from the start": "[I]f the trial court erred in concluding that the party had not established some loss of goodwill in the entitlement phase, the error would be harmless if the party could never prove the amount of that loss anyway." (*Presidio*, *supra*, 5 Cal.App.5th at pp. 204, 205.)

In its analysis, *Presidio* cited with approval the Fourth District's opinion in *Redevelopment Agency v. Metropolitan Theatres Corp.* (1989) 215 Cal.App.3d 808, 811 & footnotes 3–4 (*Metropolitan Theatres*). (*Presidio*, *supra*, 5 Cal.App.5th at p. 204.) In *Metropolitan Theatres*, the parties stipulated "Metropolitan was entitled to be compensated for a loss of goodwill." (*Metropolitan Theatres*, at p. 810.) The appellate court affirmed the trial court's refusal to instruct the jury that the condemnee bore the burden of proving the amount of goodwill loss. "While it is true that the existence of a loss [of goodwill] cannot be established without showing that a loss [of goodwill] occurred in *some* amount or another (which is nothing more than a semantic tautology), merely showing that *a* loss occurred is not logically tantamount to establishing *by a particular standard of proof* what the precise amount of *the* loss in question is." (*Id.* at p. 811, fn. 3.) By differentiating the fact of a loss from establishing the amount of the loss, the *Metropolitan Theatres* court reinforces our own conclusion that at the entitlement phase, a condemnee only need demonstrate

12

loss of some goodwill to proceed to a jury trial on the amount of compensable lost goodwill.

Similarly, our colleagues in Division Six have observed "a business owner is entitled to a jury trial on the amount of goodwill lost by a taking only if he or she first establishes, as a threshold matter, that the business had goodwill to lose." (*Dry Canyon*, *supra*, 211 Cal.App.4th at p. 491.)  The corollary of that holding is that once a condemnee has established it has suffered a loss of goodwill, it is entitled to have a jury determine the amount of lost goodwill.

Finally, the general rule of mitigation of tort damages is instructive.  Specifically, this general rule provides, " 'a party must make reasonable efforts to mitigate damages, and recovery will not be allowed for damages that a party . . . could have avoided by reasonable effort.' " (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1049 (*Health Services*) [recognizing that the defense of mitigation of damages applies to "many different sorts of legal claims" including statutory sexual harassment claims]; Rest.2d Torts, § 918, com. b, p. 502 [if party fails to mitigate, damages are reduced to value of efforts party should have made or amount of expense party should have incurred].)  Tort law does not preclude a plaintiff from recovering damages altogether simply because a plaintiff has failed to mitigate some of its damages.  (See, e.g., *Health Services*, at pp. 1043, 1049 [plaintiff claiming damages for sexual harassment could have prevented "at least some" damages by using employer's internal remedies].)  At oral argument, Yum Yum's counsel conceded that at the jury trial phase, MTA may assert an offset for the portion of loss of goodwill that could have been avoided by reasonable mitigation efforts.

13

**D. The Trial Court's Authorities Are Inapposite Because They Do Not Address Mitigation Or Whether The Condemnee Had Any Goodwill To Lose In The First Place**

As noted earlier, the trial court's ruling turned on its following reasoning: "Where the condemnee cannot establish the facts showing it took reasonable steps to preserve its goodwill, it will not be entitled to any compensation for alleged loss of goodwill," and "[u]ltimately, ' . . . if a business can retain some goodwill value at a new location by serving new customers, it must do so, even if it loses many of its old patrons.' " We respectfully observe those statements of law are inaccurate.

The trial court cited 11 Miller & Starr, *supra*, section 30A:45, pages 108–112[10] and 1 Matteoni & Veit, *supra*, section 4:71, page 117 in support of its conclusions. The eight cases cited by these treatises do not support the statements of law that the trial court endorsed.

---

[10] We set forth the text from the current edition of the treatise, which is the same as the text cited by the trial court: "In order to recover goodwill damages, the condemnee has the burden of proof in showing that the loss is caused by the taking of the property or the injury to the remainder, and that the loss cannot reasonably be prevented by relocating the business or by taking steps and adopting procedures that a reasonably prudent person would take for the purpose of preserving goodwill. Where the condemnee cannot establish these facts, it will not be entitled to any compensation for alleged loss of goodwill. The right to compensation for lost goodwill is a question for the court, not the jury. If the court finds that the condemnee has met his or her burden of proof, the question of the amount of goodwill loss will be presented to the jury." (7 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 24:45, p. 119, fn. and italics omitted.)

First, they do not address the pivotal issue here, and
" '[c]ases are not authority for propositions not considered.' "
(*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.*
(2002) 101 Cal.App.4th 1083, 1102 (*Emeryville*).)  Specifically,
seven of those cases do not turn on the threshold issue of
mitigation under section 1263.510.  (*City of Santa Clarita v. NTS
Technical Systems* (2006) 137 Cal.App.4th 264, 269–270
[taking did not cause loss of goodwill and court determines
such causation, not jury]; *Emeryville*, at pp. 1116–1120 [loss of
goodwill not caused by taking but by inevitable transition of
environmentally unsound property to better use; additionally,
compensation for post-remediation value of property duplicative
of compensation for lost goodwill]; *Muller*, *supra*, 36 Cal.3d
at pp. 270–272 [loss of cheap rent constituted compensable loss
of goodwill where taking caused condemnee to pay higher rent
at nearby location to maintain patronage and profits];
*Los Angeles Unified School Dist. v. Casasola* (2010)
187 Cal.App.4th 189, 201–202, 210 [claimed mitigation
expenses not compensable if they constitute relocation expenses];
*Redevelopment Agency v. Arvey Corp.* (1992) 3 Cal.App.4th 1357,
1362 [expenses payable as relocation assistance under
Government Code section 7262 not goodwill under
section 1263.510]; *Albers v. County of Los Angeles* (1965)
62 Cal.2d 250 [pre-section-1263.510 case interpreting
constitutional " 'just compensation' " requirement]; *Abrams*,
*supra*, 15 Cal.3d 813, 817 [goodwill not compensable under
constitutional " 'just compensation' " clauses; section 1263.510
inapplicable because eminent domain proceedings commenced
pre-enactment].)

15

MTA argues Yum Yum was required to relocate the shop and relies on the same authority the trial court cited: 1 Matteoni & Veit, *supra*, section 4:71, page 117. Specifically, that treatise states, "It is therefore conceivable that if a business can retain some goodwill value at a new location serving new customers, it must do so, even if it loses many of its old patrons." (*Id.* at pp. 117–118.) The treatise cites no authority for this proposition.

At the bench trial, Yum Yum argued that it would have to invest $250,000 to $300,000 to relocate Store 58 and most of those expenses would not have been reimbursable under the Relocation Act (Gov. Code, § 7262, subd. (a), Cal. Code Regs., tit. 25, §§ 6090, subds. (a), (b) & (i), 6094). We are aware of no authority compelling a condemnee to relocate when the investment required to relocate would make it diseconomic to do so. Indeed, the authority is to the contrary. (*Unocal California Pipeline Co. v. Conway* (1994) 23 Cal.App.4th 331, 336 (*Unocal*) ["We are not deciding whether loss of goodwill is an appropriate item of damages here. What we are deciding is that relocation is not a requirement to be eligible for such damages."].) As Division 6 explained in *Unocal*: "In order to recover for loss of goodwill the owner is required to show ' [t]he loss cannot reasonably be prevented by a relocation of the business . . . .' If anything, that language indicates loss will be compensated where there is no relocation." (*Ibid*.)

The only case involving the threshold issue of mitigation that the treatises cite is *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824 (*Sheily*). *Sheily* did not consider whether a condemnee loses all entitlement to goodwill damages if the condemnee failed to mitigate only some of its loss

16

of goodwill.  Instead, *Sheily* addressed whether substantial evidence supported the trial court's finding of the absence of *any* effort to mitigate.  In addition, as set forth below, MTA's own uncontroverted evidence supported the existence of loss of some goodwill that could not have been reasonably mitigated.

**E.     Yum Yum Established Entitlement To Goodwill Damages Because MTA's Uncontradicted Expert Testimony Established That Yum Yum Would Lose Goodwill Even If It Relocated The Shop**

MTA's expert on goodwill, Amster, conceded Yum Yum would have lost some of Store 58's goodwill even if Yum Yum had relocated the shop to one of MTA's three proposed relocation sites.  Specifically, Amster stated Yum Yum could have preserved only $202,000, $138,000, or $340,000 of the shop's preexisting $620,000 of goodwill, depending on where Yum Yum could have relocated the shop.[11]  Then on cross-examination, Amster affirmatively stated Yum Yum would have lost goodwill even if it relocated the shop.  Neither party disputed these opinions.

MTA focuses almost exclusively on the existence of substantial evidence to support the trial court's finding that Yum Yum failed to mitigate damages.  The trial court based its finding, however, on an erroneous legal assumption that if Yum Yum failed to mitigate as to some of its loss of goodwill, it

---

[11] MTA asserts Amster's testimony only proves Yum Yum could have preserved some goodwill.  MTA's assertion ignores the obvious corollary:  If Yum Yum could have preserved *some* portion of the shop's goodwill, Yum Yum necessarily would lose some other portion of that goodwill.  Moreover, as set forth below, Yum Yum's counsel elicited that corollary from Amster on cross-examination.

17

was not entitled to any compensation for goodwill. It was uncontroverted that Yum Yum would have lost quantifiable goodwill even if it had relocated to any of the three locations MTA proposed. We thus cannot conclude that the trial court's erroneous interpretation of the law was harmless.

## DISPOSITION

The judgment is reversed, and the matter remanded with instructions to (1) enter an order that Yum Yum established its entitlement to compensation for goodwill resulting from the taking of the shop, and (2) hold a jury trial to determine the value of that loss. Yum Yum is awarded its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


BENDIX, J.


We concur:



CHANEY, Acting P. J.



WEINGART, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19