[No. B073794. Second Dist., Div. Six. Mar. 16, 1994.]

UNOCAL CALIFORNIA PIPELINE CO., Plaintiff and Respondent, v. FRANCES M. CONWAY et al., Defendants and Appellants.

**COUNSEL**

Lowthorp, Richards, McMillan, Miller, Conway & Templeman and Charles J. Conway, Jr., for Defendants and Appellants.

Baker & McKenzie, Dennis Keeley and Peter J. Engstrom for Plaintiff and Respondent.

OPINION

GILBERT, J.—In this eminent domain action a pipeline corporation has as its only customer its parent company. We hold it may be a public utility as defined in Public Utilities Code section 216. The pipeline corporation thus has the power of eminent domain. (Pub. Util. Code, § 615.)

We also hold that a business need not relocate to qualify for damages due to loss of goodwill under Code of Civil Procedure section 1263.510.

We reverse the judgment granted pursuant to plaintiff pipeline corporation's motion for summary judgment for further proceedings on the issue of damages.

FACTS

Defendants are the owners of the McGrath Home Ranch, which has been in the defendants' family since the 1870's. In 1937 the McGrath family entered into an oil and gas lease with Standard Oil. Standard drilled oil wells on the property and constructed a six-inch pipeline. The pipeline was constructed for the purpose of transporting crude oil from the McGrath leases to a shipping point in Ventura.

In 1981 Chevron, the successor to Standard, entered into an agreement with Union Company. The agreement allowed Union to transport oil from offshore wells through the six-inch pipeline to a shipping point in Ventura. The pipeline belonged to Chevron. But because the McGraths were not obligated to allow the line to be used to transport oil other than that from the McGrath leases, Union had to make an agreement with the McGraths. Union agreed to pay the McGraths $5,000 per month for the privilege of shipping oil through the line. The McGraths had a right to cancel the agreement under certain circumstances.

In May of 1990 Berry Petroleum Company acquired the McGrath leases from Chevron, and succeeded to Chevron's rights in the pipeline, including Chevron's rights in the Union-Chevron agreement. Berry desired to ensure that the McGraths would not exercise their right to terminate Union's use of the pipeline. In exchange for an agreement restricting the McGraths' right to terminate, Berry agreed to pay the McGraths sums sufficient to keep the $5,000 monthly Union payments in line with any increase in the cost of living.

Having secured the use of the line, Berry began to negotiate with Union. The parties could not agree, however, and on September 4, 1990, Berry sent

a letter terminating Union's right to use the pipeline, effective one year from the date of the notice.

The letter was intended as a negotiating tactic, but Union responded by obtaining permits to build its own eight-inch pipeline through a subsidiary, plaintiff Unocal California Pipeline Company (Unocap). One of the conditions of Unocap's coastal development permit was that it abandon the use of the six-inch pipeline. The condition was imposed because of a coastal commission staff report stating that the six-inch line ran through environmentally sensitive areas and lacked modern safety features.

Unocap filed the instant eminent domain action to take a subsurface easement for its pipeline. The easement runs beneath a public highway that traverses the McGrath ranch. Unocap got an order for immediate possession upon depositing $26,400, the probable amount of compensation based on an appraisal.

The defendants raised as a defense to the action that Unocap was not a public utility and it had no power of eminent domain. The defendants also claimed they were entitled to compensation for loss of goodwill. The claim for loss of goodwill was based on the cessation of Unocap's $5,000 monthly payment when the six-inch line was abandoned.

Unocap moved for summary judgment. In support of its motion it submitted evidence that both the California Public Utilities Commission (CPUC) and the Federal Energy Regulatory Commission had accepted Unocap's tariffs, rules and regulations for the purpose of creating public utility common carrier status. Further the CPUC had expressly found, "Unocap is now a common carrier public utility subject to the jurisdiction of the California Public Utilities Commission."

In opposition to the motion the defendants' counsel declared: "The present 8-inch shipping line is used by only one oil company, Union. The 8-inch line is fed with crude from Union's offshore platforms and from crude purchased by Union from Berry." The defendants submitted an appraisal showing the value of their claimed loss of goodwill at $254,000. The defendants did not contest Union's evaluation of the easement itself.

The trial court granted summary judgment in favor of Unocap.

DISCUSSION

I

■ The defendants contend Unocap has no power to take in eminent domain because it is not a public utility. The contention is based on the theory that a public utility cannot have itself as its only customer.

The defendants rely on Public Utilities Code section 216, subdivision (a). That subdivision provides in part, " 'Public Utility' includes every . . . pipeline corporation . . . where the service is performed for, or the commodity is delivered to, the public or any portion thereof."

But subdivision (c) Public Utilities Code of section 216 provides: "When any person or corporation performs any service for, or delivers any commodity to, any person, private corporation, municipality, or other political subdivision of the state, which in turn either directly or indirectly, mediately or immediately, performs that service for, or delivers that commodity to, the public or any portion thereof, that person or corporation is a public utility subject to the jurisdiction, control, and regulation of the commission and the provisions of this part."

In *Richfield Oil Corp.* v. *Public Util. Com.* (1960) 54 Cal.2d 419 [6 Cal.Rptr. 548, 354 P.2d 4], our Supreme Court pointed out that subdivision (c) of Public Utilities Code section 216 does not require service or delivery of a commodity to the public. (54 Cal.2d at p. 428.) The court held ". . . a utility that has dedicated its property to public use is a public utility even though it may serve only one or a few customers." (*Id.* at p. 431.)

The defendants try to distinguish *Richfield* on the ground that Richfield's only customer was another utility, whereas here Unocap's only customer is its parent corporation. That is true, but the court in *Richfield* made it clear that under Public Utilities Code section 216, subdivision (c) the question is not the number or type of customers, but whether the utility has dedicated its property to public use. Here Unocap has so dedicated its property and has submitted to the jurisdiction of the CPUC. That is all that is required to become a public utility.

## II

■ The next question is whether the defendants are entitled to compensation for loss of goodwill.

Code of Civil Procedure section 1263.510 provides in part: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following:

"(1) The loss is caused by the taking of the property or the injury to the remainder.

"(2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill.

"......................................

"(b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

Unocap argues a landowner is entitled to compensation for loss of goodwill only when forced to relocate. Unocap relies on *People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340]. There a business was forced to relocate to a building charging higher rent. In upholding the right of the owner of the business to recover the difference in rental cost the court said: "[Code of Civil Procedure section 1263.510] was enacted in response to widespread criticism of the injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation. [Citations.] The purpose of the statute was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location."

The court in *Muller* was speaking about its particular facts. Although Code of Civil Procedure section 1263.510 unquestionably allows reimbursement for relocation costs, there is nothing in the section or in *Muller* that leads to the conclusion the loss of goodwill is compensable only where the landowner is forced to relocate. Relocation is mentioned in the statute in subdivision (a)(2). In order to recover for loss of goodwill the owner is required to show "[t]he loss cannot reasonably be prevented by a relocation of the business . . . ." If anything, that language indicates loss will be compensated where there is no relocation.

We are not deciding whether loss of goodwill is an appropriate item of damages here. What we are deciding is that relocation is not a requirement to be eligible for such damages.

The judgment is reversed and remanded for further proceedings on the issue of damages. All parties are to bear their own cost on appeal.

Stone (S. J.), P. J., and Yegan, J., concurred.