Filed 11/20/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA STATE LANDS COMMISSION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PLAINS PIPELINE, L.P. et al., <br><br> Defendants and Respondents. | 2d Civil No. B295632 <br> (Super. Ct. No. 18CV02504) <br> (Santa Barbara County) <br><br> ORDERING MODIFYING OPINION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on November 19, 2020, be modified as follows

The first line of the first paragraph in the opinion is changed to read:

Because of a company's negligence, its pipeline carrying oil burst.

There is no change in the judgment.

GILBERT, P.J.          YEGAN, J.          TANGEMAN, J.

Filed 11/19/20 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE LANDS COMMISSION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PLAINS PIPELINE, L.P., et al., <br><br> Defendants and Respondents. | 2d Civil No. B295632 <br> (Super. Ct. No. 18CV02504) <br> (Santa Barbara County) |

Because of an oil production company's negligence, its pipeline carrying oil burst.  The company was unable to transport oil from land it leased from the state, depriving the state of royalty income and damaging its property.

The pipeline company has been designated a public utility.  Under the circumstances here, we conclude the pipeline company is not exempt from liability for the interruption in service.

Appellants California State Lands Commission (the Commission) and Aspen American Insurance Company (Aspen)

filed a lawsuit against Plains Pipeline, L.P., and its affiliates[1] (collectively "Plains"), claiming that when Plains's negligent maintenance of a pipeline resulted in disrupting the flow of oil, it also disrupted the payment of royalty income to the Commission, and caused damage to improvements on the Commission's land. The Commission and Aspen appeal from a judgment in favor of Plains resulting from the dismissal of their first amended complaint after a demurrer was sustained without leave to amend. We reverse.

FACTUAL AND PROCEDURAL HISTORY

The Commission administers public lands owned by the state, including submerged lands. (Pub. Resources Code, § 6216.) The Commission leased offshore lands to Venoco, Inc., to operate Platform Holly. Oil and gas produced on the platform were pumped to an onshore facility and pipeline operated by Venoco. Several miles later, the oil and gas reached a pump station where, together with oil and gas from three ExxonMobil platforms, they were pumped into the pipeline at issue here, Line 901. Line 901 was owned and operated by Plains. It ran up the coast where it connected to other pipelines.

Plains operated Line 901 pursuant to a Federal Energy Regulatory Commission (FERC) tariff that applied to "[a]ny Shipper desiring to tender crude petroleum for transportation." The tariff set rates and permitted Plains to refuse oil that did not meet specified standards. If all the oil submitted for distribution exceeded Plains's capacity, the total capacity was required to be prorated among the shippers.

---

[1] The affiliates are Plains All American Pipeline, L.P., Plains GP Holdings, L.P., Plains AAP, L.P., Plains All American GP LLC, and PAA GP LLC.

Plains failed to reasonably monitor, maintain, and repair Line 901. Pipeline walls were corroded to as little as 1/16-inch thick. On May 19, 2015, Line 901 ruptured at Refugio State Beach, spilling 140,000 gallons of crude oil onto the beach and into the ocean. Line 901 was shut down and remains closed.

Because the shutdown eliminated the only feasible method to transport oil and gas from Venoco's onshore facility to refineries, Venoco stopped production, thus ending its obligation to pay royalties to the Commission. Venoco quitclaimed its lease back to the state. The shutdown of Line 901 caused property damage to the land and its facilities that the Commission was obligated to remediate and repair, including capping wells to prevent future leaks.

Plains and Venoco had a connection agreement for Line 901, but neither the Commission nor Aspen were parties to the agreement. Aspen paid the Commission $22 million to meet a portion of Venoco's bonded obligations to maintain the lands safely and to decommission the wells and other structures. Aspen was subrogated to the rights of the Commission against Plains.

The first amended complaint against Plains alleges negligence causing economic and property damage, willful misconduct, and negligent interference with prospective economic advantage.[2] The trial court took judicial notice that a jury found Plains guilty of knowingly discharging oil, or reasonably should have known that its actions would cause the discharge of oil, into the waters of the state, a felony (Gov. Code, § 8670.64, subd. (a)(3)) among other crimes.

---

[2] An additional cause of action for violation of the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (Gov. Code, § 8670.56.5) was dismissed on motion of appellants.

3

## DISCUSSION

### I

### *Standard of Review*

We review de novo the order sustaining the demurrer. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) " '[W]e determine whether the complaint states facts sufficient to constitute a cause of action.' " (*Ibid.*)

### II

### *Public Utility Exemption*

The Commission contends the trial court erred in determining that Plains is exempt from liability as a public utility.

In general, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." (Civ. Code, § 1714, subd. (a).)

Plains does not contest that the complaint adequately alleges negligence. It argues, however, that as a public utility it is exempt from liability. The Commission claims that Plains does not qualify as a public utility under California law. We need not decide whether Plains qualifies as a public utility. Assuming it does, it is not exempt from liability.

The seminal case regarding public utility immunity is *Niehaus Bros. Co. v. Contra Costa Water Co.* (1911) 159 Cal. 305. In *Niehaus*, plaintiff's mill was destroyed when the water utility's company's service failed and plaintiff was unable to put out a fire.

4

In holding the water utility not liable, our Supreme Court pointed out the water utility is discharging a public duty that would otherwise devolve upon the city itself. (*Id.* at pp. 318-319.) The compensation the utility receives is fixed by the city. The court stated that given the "meager remuneration" provided by the municipality's rates, the water company could not be deemed to have "undertake[n] to make good the loss which would result from the destruction of a modern city by fire." (*Id.* at p. 318; see also *Ukiah v. Ukiah Water and Imp. Co.* (1904) 142 Cal. 173, 178 [water company not liable for failure to provide sufficient water to extinguish fire].)

Cases following *Neihaus* have held, in the absence of a contract between the utility and the consumer expressly providing for the furnishing of a service for a specific purpose, a public utility owes no duty to a person injured as a result of an interruption of service or a failure to provide service. (*White v. Southern Cal. Edison Co.* (1994) 25 Cal.App.4th 442, 448.) In *White*, plaintiff was injured in a motor vehicle accident that occurred in an intersection near inoperative street lights owned and maintained by an electric utility.

In *Lowenschuss v. Southern Cal. Gas Co.* (1992) 11 Cal.App.4th 496, we determined that a gas utility was not liable for its refusal to purge gas from pipes in the path of a rapidly expanding fire.

Plains argues that the reason for the exemption from liability for public utilities is that their rates are controlled by governmental entities, and the rates do not take into account liability for damages for failure of service. Plains points out that its rates are set by FERC.

But the analysis is not that simple. *Niehaus* points out that the water utility provides a public service that would otherwise devolve on the municipality. In each of the cases in which the exemption is applied, the utility directly serves members of the general public in ways similar to the public utility in *Niehaus*. The rates for utilities that provide essential services to the public, such as water (*Neihaus*), electricity (*White*), and gas (*Lowenschuss*), must be kept low to allow even the most economically disadvantaged members of the public to obtain essential services. One way to keep rates low is to limit liability.

In contrast, Plains does not deliver essential municipal services to members of the general public. Its task is to transport oil to a private entity for commercial purposes. Although it is called a public utility, it is a private business, entitled to no more immunity from liability than any ordinary private business. Its rates are set by FERC and do not include compensation for liability. That does not require an exemption. Plains may not be compensated for damages caused by its negligence.

Plains reliance on *Venoco, LLC v. Plains Pipeline, L.P.* (9th Cir. 2020) 814 Fed.Appx. 318 is misplaced. There, in a memorandum opinion, the court concluded that under California law all public utilities are exempt from liability. The court reached that conclusion without analyzing the facts or reasoning of the cases that provide for immunity. Our analysis of the facts and reasoning of those cases lead to a different conclusion. We decline to follow *Venoco*.

The dissent cites our case *Unocal California Pipeline Co. v. Conway* (1994) 23 Cal.App.4th 331, also cited by *Venoco*. The dissent is puzzled by what it considers an anomaly that here we did not reaffirm our holding in *Unocal*. It is self-evident that

6

*Unocal* is far removed from the instant case. Yes, Unocal was a public utility that served only one customer. We agree that serving only one or two customers does not disqualify Plains as a public utility. But it does disqualify Plains from claiming immunity from liability. To have immunity from liability, Plains must provide an essential service to the general public.

*Unocal* involved an eminent domain action in which the Coastal Commission ordered the movement of Unocal's pipeline under the ground of a private landowner. The landowner sued for loss of goodwill. *Unocal* does not involve a public utility's claim of immunity. The dissent's grant of blanket immunity to all public utilities fails to take into account the policy considerations our Supreme Court considered in granting immunity to public utilities that provide essential services. In the absence of such policy considerations, the grant of immunity does not serve the public good.

No statute grants immunity to public utilities. Whether immunity applies is a question of judicial policy.

## II

### *Damages*

Plains contends the Commission's damages are barred by the economic-loss rule.

Plaintiff cannot recover economic damages resulting from negligence without a physical injury to a person or property. (*City of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 318.) Plains argues that at the time the pipeline failed, the Commission owned only the land; Venoco owned the property that was damaged. Thus, Plains claims the Commission has suffered only economic loss.

7

(a) Physical Damage

The Commission's complaint alleges:

"Since Venoco's second entry into Chapter 11 protection and quitclaim of the Leased Lands, the Commission has been and continues to pay roughly $1,000,000 per month to Venoco or the Commission's other contractors to remediate and repair property damage to the oil and gas production facilities and to maintain the facilities in a safe condition to avoid further property damage. The Commission will be required to expend additional and substantial sums of money to remediate and repair the above-described property damage and maintain, decommission, and remove said oil and gas production facilities on the Leased Lands to avoid further property damage."

The Commission alleges that it has succeeded to Venoco's property, the damage continues, and it is required to spend substantial amounts for repairs and maintenance to keep the facility in a safe condition. That is a sufficient allegation of continuing damage to the property the Commission now owns. Plains cites no authority that relieves it from liability for continuing damage to property held by a successor in interest. The complaint alleges property damage, not purely economic loss.

Plains's reliance on *Texas Eastern Transmission Corp. v. McMoran Offshore Exploration Co.* (5th Cir. 1989) 877 F.2d 1214 is misplaced. In *Texas Eastern*, an undersea pipeline ruptured during relocation of a drilling rig platform. The court held that a plaintiff had no cause of action for damages resulting from loss of production absent a proprietary interest in the pipeline. (*Id.* at pp. 1223-1224.)

First, unlike this case, plaintiff here did not allege physical damage to its property. Second, *Texas Eastern* is not based on

8

California law.  Third, to the extent *Texas Eastern* can be read to conflict with this case, we decline to follow it.

(b)  Special Relationship

The economic loss rule does not apply where there is a special relationship between the parties.

In *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, a restaurant leased space at a county airport.  The lease required the county to provide heat and air conditioning.  The county entered into a contract with defendant to provide the heating and air conditioning systems to the restaurant.  The restaurant sued defendant, alleging that an unreasonable delay in performing the contract caused it to lose business.  The trial court sustained the defendant's demurrer without leave to amend. Our Supreme Court reversed.  The court held that where a special relationship exists between the parties, recovery for purely economic loss is not foreclosed.  (*Id.* at p. 804.)  The court gave six factors to consider: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." (*Ibid.*)

*(1)  Intended to Affect Plaintiff*

Plains relies on *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 400, where our Supreme Court cited *J'Aire* with approval and stated, "What we mean by special relationship is that the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out."  There the defendant owned a gas storage facility

9

that suffered a massive leak causing an evacuation of residents who lived within a five-mile radius. Businesses within the evacuation area brought a class action alleging purely economic losses. The businesses conceded the only relevant ties to the defendant were having the misfortune of operating near the defendant's gas storage facility. (*Id.* at p. 408.) Our Supreme Court determined that there was no special relationship between the businesses and the defendant.

Here the relevant tie between the Commission and Plains is more than that the Commission happened to own a business in the vicinity of an oil spill. The purpose of Plains's pipeline was to transport oil taken from the Commission's land so that the Commission, among others, could make a profit. The Commission is intended to be a direct beneficiary of the pipeline transaction.

*(2) Foreseeability of Harm*

It was entirely foreseeable that if the pipeline failed, the Commission would lose royalties from its land and would be required to take over and maintain Venoco's facilities in order to prevent further harm.

*(3) Degree of Certainty Plaintiff Suffered Injury*

The Commission alleged that it lost royalty payments and was required to spend money to repair and maintain Venoco's facilities. There is a high degree of certainty that the Commission suffered injury.

*(4) Closeness of Connection Defendant's Conduct and Injury*

There is an immediate and direct connection between Plains's conduct and the Commission's injury.

## (5)  Moral Blame

Plains's conduct was not only grossly negligent, it was criminal.

## (6)  Policy of Preventing Future Harm

The immense environmental damage caused by an oil spill of the quantity involved here is well known.  The damage could have easily been avoided if Plains had bothered to conduct an adequate inspection of its pipeline.  Damages awarded to the Commission will encourage Plains and other pipeline operators to avoid such future harm.

The complaint alleges sufficient facts to show a special relationship between the parties that allows the Commission to recover purely economic damages.

## IV

## Inverse Condemnation

For the first time on appeal, the Commission contends it should be allowed to amend its complaint to allege that if Plains is a public utility, it is liable for property damage in inverse condemnation.

We need not decide the matter.  The allegations of the Commission's complaint without amendment are sufficient to require an unqualified reversal.  The effect of an unqualified reversal is to leave the case "at large" as if no judgment had ever been rendered.  (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 869, p. 928.)  Thus, the proper procedure is to make any motion to amend in the trial court in the first instance.  We express no opinion on how the trial court should rule.

11

The judgment is reversed.  Costs are awarded to appellants.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.



I concur:              YEGAN, J.


12

TANGEMAN, J., Dissenting:

I respectfully dissent. The majority couches its holding that Plains Pipeline, L.P. ("Plains") is not entitled to immunity from liability for an interruption in service because "[a]lthough it is called a public utility, it is a private business, entitled to no more immunity from liability than any ordinary private business." (Maj. opn., *ante*, p. 6.)

This holding is inconsistent with both statutory and case authorities in existence for more than a century. (*Niehaus Bros. Co. v. Contra Costa Water Co.* (1911) 159 Cal. 305; *Ukiah v. Ukiah Water & Imp. Co.* (1904) 142 Cal. 173.) In reaching this result, the majority grafts onto existing law the additional requirements that in order to benefit from the exemption from liability, the public utility must do more than "qualify as a public utility" (maj. opn. *ante*, at p. 4). These additional requirements lack any grounding in existing law and will give rise to uncertainty in the law and increased litigation.

The majority decline to decide whether a pipeline company that serves only a few commercial users is a public utility. *Venoco, LLC v. Plains Pipeline, L.P.* (9th Cir. 2020) 814 Fed.Appx. 318 (*Venoco*), which the majority "decline[s] to follow" (maj. opn. *ante*, at p. 6), answered that question in the affirmative. In support of that answer, *Venoco* cited *Unocal California Pipeline Co. v. Conway* (1994) 23 Cal.App.4th 331 (*Unocal*), for the proposition that a public utility "'may serve only one or a few customers.'" *Unocal* was decided by a panel of this same court, including both members of the majority here. We held in *Unocal* that a pipeline whose only customer was its own parent corporation was a public utility. The same result should follow here. Nor does the majority distinguish Public Utilities

Code section 216, subdivision (a)(1), which states that a "'public utility'" includes every common carrier [and] pipeline corporation . . . where the service is performed for, or the commodity is delivered to, the public or any portion thereof."

This opinion gives rise to more questions than it answers. The majority's new requirement that the public utility must "deliver essential municipal services to members of the general public" (maj. opn. *ante*, p. 6) has never existed before today. Which services are "essential" and which are merely convenient? Which services come within the umbrella of "municipal" services? And what segment of the population constitutes the "general public"? Does this opinion purport to strike the words "or any portion thereof" from Public Utilities Code section 216, subdivision (a)(1)?

With this decision, the majority casts doubt on more than a century of cases holding public utilities exempt from liability for interruptions in service. Moreover, this opinion creates the anomalous result that the state and its insurer can sue Plains for indirect damages here, even though their losses are derivative of the direct loss to Venoco. Meanwhile, the direct victim, Venoco, is barred from recovery. (*Venoco, supra*, 814 Fed.Appx. 318.)

Because I discern no legal basis for the anomalous results reached here, I dissent. I would affirm the trial court's thoughtful and reasoned decision.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

2

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Xavier Becerra, Attorney General, Diane S. Shaw, Assistant Attorney General, Brian D. Wesley and Matthew C. Heyn, Deputy Attorneys General, for Plaintiff and Appellant California State Lands Commission.

Robins Kaplan, David C. Veis, Jason R. Fair and Glenn A. Danas for Plaintiff and Appellant Aspen American Insurance Company.

Baker Marquart, Jaime W. Marquart, Brian E. Klein and Shane Pennington for Venoco as Amici Curiae on behalf of Plaintiffs and Appellants.

Fell, Marking, Abkin, Montgomery, Granet & Raney, Craig S. Granet; Munger, Tolles & Olson, Henry Weissmann, Fred A. Rowley, Jr., Daniel B. Levin and Aaron D. Pennekamp for Defendants and Respondents.